**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 01, 2017.**



_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  16-51834 |
| OLMOS EQUIPMENT INC. | § | |
| Debtor | § | CHAPTER 11 PROCEEDING |

### ORDER CONFIRMING THE DEBTOR'S
### FIRST AMENDED PLAN OF REORGANIZATION, AS MODIFIED

On March 21st, 2017, the Court considered the Debtor's First Amended Plan of Reorganization which the Debtor filed on January 17th, 2017 [Docket #183 and referred to as the "Original Plan"], as modified by the amendments described in Exhibit "A" to the Notice of Filing of Proposed Blacklined First Amended Plan of Reorganization of Olmos Equipment Inc. with Proposed Modifications [Docket #240 and the referred to as the "Notice"] and as further amended by the March 21st, 2017 additional modifications announced in open court. The plan with all court approved modifications is attached hereto as Exhibit "A", is further modified in Section 30 below and is hereinafter referred to as the "Plan"). The Court, having determined that, pursuant to Bankruptcy Rule 2002, a true and correct copy of the Original Plan and Notice was transmitted to all creditors, parties-in-interest, and other parties filing notices of appearance in this Case, hereby **FINDS** that:

1.  <u>Findings and Conclusions</u>. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

Furthermore, additional findings and conclusions read into the Court's record are incorporated herein by reference as if fully copied and set forth at length.

2.  <u>Jurisdiction</u>.  The Plan's Confirmation presents a core bankruptcy matter under Title 28 of the United States Code over which this Court has jurisdiction to enter a final order.

3.  <u>Plan Compliance with Code (Section 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, as set forth more fully in this Paragraph and in Paragraphs 4 through 13 hereof.

 a. Olmos Equipment Inc. ("Debtor") is a proper Debtor under 11 U.S.C. Section 109.

 b. On August 12th, 2016, Debtor filed its voluntary Chapter 11 petition, pursuant to 11 U.S.C. Section 301.

 c. This Court has jurisdiction over the Case pursuant to 28 U.S.C §1334.

 d. Venue of the Case is properly in this district pursuant to 28 U.S.C. § 1408 and 1409.

 e. The hearing on Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

 f. The proponent of the Plan is Debtor Olmos Equipment Inc. and, therefore, is a proper proponent of the Plan pursuant to Section 1121(a).

 g. After notice and a hearing on the adequacy of the Debtor's Disclosure Statement for the Debtor's Plan of Reorganization pursuant to Section 1125 of the Bankruptcy Code ("Disclosure Statement"), this Court, on January 12th, 2017 and pursuant to Section 1125 and Bankruptcy Rules 3016 and 3017, entered its Order Approving Debtor's First Amended Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan of Reorganization, Combined with Notice of Confirmation Hearing Thereof [Docket #182] ("Procedural Order").  No appeal was taken from the Procedural Order.

 h. Pursuant to the Procedural Order, the Debtor, by and through its attorney of record, duly mailed, by first-class mail, postage prepaid, a copy of the Procedural Order, the Disclosure Statement, the Plan, and a ballot for acceptance or rejection of the Plan to all Creditors of Debtor and parties-in-interest required to receive the same.

 i. Any person required to receive notice of the hearings on the adequacy of the Disclosure Statement and Confirmation of the Plan has received due, proper and adequate

notice thereof.

j.      Due, proper, and adequate notice, and an opportunity to appear, was given to all persons with any claim against Debtor.

4.      <u>Proper Classification (Section 1123(a)(1))</u>.  The Classification of Claims under the Plan is consistent with Section 1122.  The Claims placed in a particular Class pursuant to the Plan are substantially similar to the other Claims in such Class.  As set forth in the Court's record and as approved by the Court, the Debtor has included equity security or interest holders of the Debtor who hold Allowed Claims in Class 8 under the Plan.

5.      <u>Specified Treatment of Unimpaired Classes (Section 1123(a)(2))</u>.  The Plan, as modified by the Debtor as announced into the Court's record, specifies that there are not any un-impaired under the Plan.

6.      <u>Specified Treatment of Impaired Classes Section 1123(a)(3))</u>.  The Plan specifies the treatment of impaired Classes 1, 2, 3, 4, 5, 6, 7 and 8 in Article IV of the Plan.  All holders of Claims impaired under and entitled to vote for or against the Plan have been given adequate notice and opportunity to vote and to accept or reject the Plan.

7.      <u>No Discrimination (Section 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim in a particular Class.

8.      <u>Implementation of the Plan (Section 1123(a)(5))</u>.  The Plan provides adequate means for the Plan's implementation.

9.      <u>Section 1123(a)(6)</u>.  Sections 1123(a)(6) is inapplicable to the Debtor and the Plan.

10.     <u>Section 1123(a)(7)</u>.  The Plan complies with Section 1123(a)(7) of the Code.

11.     <u>Executory Contracts and Unexpired Leases (Section 1123(b)(2))</u>.  The Plan provides that all Executory Contracts and unexpired leases entered into prior to the Petition Date (and not otherwise assumed or rejected {pursuant to the provisions of the Plan, this order or otherwise} prior to the Effective Date or and that are not the subject of a motion to assume executory contracts and/or unexpired leases at the time of the entry of this order) shall be deemed rejected as of the Effective Date.

12.     <u>Settlements and Retention of Claims (Section 1123(b)(3))</u>.

The following settlements announced in the Court's record at the Confirmation Hearing are approved:

(a) <u>Bexar County/Laddie Place</u>

Bexar County, Texas shall, upon executing mutually acceptable settlement documents, pay the Debtor $525,000.00 to settle all of the Debtor's claims relating to the "Laddie Place" project. $345,601.13 of such settlement amount shall satisfy the remaining amount due and owing under the Debtor's "Laddie Place" contract and that additional $179,398.87 shall settle the Debtor's alleged damages incurred at "Laddie Place.

(b) <u>Pipelayers, Inc.</u>

(1) The Debtor shall pay Pipelayers, Inc.:

   (A) $50,960.31 immediately for work performed at Bexar County, Texas' "Big Country" project;

   (B) $81,076.69 in "earned" retainage when Bexar County, Texas pays the remaining balance due and owing under the Debtor's "Big Country" contract with Bexar County, Texas; and

   (C) $36,963.70 in "earned" retainage when the Debtor receives the "Laddie Place" settlement funds described in 12(a) above (at which time Pipelayers, Inc. shall dismiss its pending State Court litigation against Olmos Equipment and its surety relating to the "Laddie Place" project).

(2) Upon receipt of the $50,930.61 payment described in 12(b)(1)(A) above, Pipelayers, Inc. shall immediately resume its performance under the terms of its contract with the Debtor and relating to the "Big Country" project. Furthermore, upon Pipelayers, Inc.'s receipt of all payments described above and for any additional work performed by Pipelayers, Inc. under the parties' contract relating to the "Big Country" project, Pipelayers, Inc. shall: (a) dismiss its pending State Court litigation against Olmos Equipment and its surety relating to the "Big Country" project (b) withdraw any claims in the Bankruptcy Case and (c) execute mutual releases in a form acceptable to the Debtor and Pipelayers, Inc. Until such time that all of the above-described payments are made, Pipelayers, Inc. shall retain all of its claims against Olmos Equipment's surety on the "Big Country" project.

(3) Pipelayers, Inc. and the Debtor shall cooperate in negotiating with Bexar

County's representatives relating to the potential amendment of Bexar County, Texas' "Big Country" contract with the Debtor

The Debtor shall retain and is retaining all claims belonging to the Debtor and the Bankruptcy Estate (including those under Chapter 5 of the Bankruptcy Code). As set forth below and in Exhibit "A", the Debtor and the Litigation Trust shall be the responsible parties for pursuing the collection of these claims.

13. <u>Debtor's Compliance with Code (Section 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code.

    a.    The Plan complies with Bankruptcy Rule 3016(b).

    b.    The Debtor has engaged in post-petition disclosure and solicitation in good faith and in compliance with the applicable provisions of Section 1125.

14. <u>Plan Proposed in Good Faith (Section 1129(a)(3))</u>. The Plan has been proposed in good faith and not by any means forbidden by law.

15. <u>Payment of Costs and Expenses (Section 1129(a)(4))</u>. All payments made, to be made, or promised by the Debtor, or by a person acquiring property under the Plan, for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, have been approved by, or are subject to the approval of, this Court as reasonable.

16. <u>Disclosure of Directors, Officers and Insiders under Section 1129(a)(5)</u>. The Debtor has disclosed the requisite information under Section 1129(a)(5).

17. <u>Section 1129(a)(6)</u>. Section 1129(a)(6) is inapplicable to the Debtor and the Plan.

18. <u>Best Interests of Creditors (Section 1129(a)(7))</u>. With respect to each impaired Class of Claims who had members vote to accept or reject the Plan, each voting holder of a Claim of such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code on such date. Furthermore, no holder of a Secured Claim has made an election under Section 1111(b)(2).

19. <u>Plan Acceptance (Section 1129(a)(8))</u>. Each Class that is impaired under the Plan and that has Class members who voted has accepted the Plan.

20. <u>Plan Treatment of Administrative Claims (Section 1129(a)(9))</u>. The Plan

provides for payment in full of all Allowed Priority Claims pursuant to the requirements of Section 1129(a)(9). Allowed Priority Claims under Section 1129(a)(9)(A) include Deere Credit, Inc.'s $16,979.55 claim.

21. <u>At Least One Impaired Class Accepted Plan (Section 1129(a)(10))</u>. As set forth below and because of the modifications contained in Exhibit "A" attached hereto and contained herein, Jim Weynand has changed his vote in order to accept the Plan. Therefore, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider of Debtor. Class 7 is impaired under the Plan and has accepted the Plan. Even though impaired classes (e.g. Classes 1, 2, 3, 4, 5 and 6 and 8) did not vote, such classes are bound by the terms of the Plan.

22. <u>Feasibility (Section 1129(a)(11))</u>. The Debtor has shown by a preponderance of the evidence that there is a reasonable likelihood that the Debtor will, in fact, be able to perform its obligations under the Plan as projected. The evidence in the record demonstrates that, after Confirmation, Debtor should be able to satisfy its obligations under the Plan. Thus, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of Debtor.

23. <u>Certain Fees (Section 1129(a)(12))</u>. The Plan explicitly provides for the payment of expenses under 28 U.S.C. §1930; therefore, the requirement contained in Section 1129(a)(12) is satisfied. Specifically, the Reorganized and Revested Debtor shall make all post-confirmation payments to the United States Trustee as may be required by 28 U. S. C §1930 until this case is closed by the Bankruptcy Court or is converted to another chapter.

24. <u>Retiree Benefits (Section 1129(a)(13))</u>. Debtor does not have any obligations in respect of retiree benefits.

25. <u>Section 1129(a)(14) and (15)</u>. Sections 1129(a)(14) and (15) are inapplicable to the Debtor and the Plan.

26. <u>Section 1129(a)(16)</u>. The Plan complies with provisions of Sections 1129(a)(16).

27. <u>Plan is Fair and Equitable and Does Not Discriminate (Section 1129(b))</u>. Since the provisions of Section 1129(a)(8) have been met, Section 1129(b) does not apply. In any event, the Plan does not discriminate unfairly against and is fair and equitable with respect to all Classes of Claims.

28. <u>No Other Plan (Section 1129(c))</u>. There is no other plan of reorganization that

has been moved for Confirmation. This Plan is found to be the only plan of reorganization pending before this Court.

29. <u>No Avoidance of Taxes (Section 1129(d))</u>. The primary purpose of the Plan is not for the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933. There has been no request by a government unit that is a party-in-interest in the Case to make a finding that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of the securities laws. No provision of federal or state securities laws are violated by the terms of the Plan. In connection herewith, the Court expressly finds that, pursuant to Section 1145 of the Code, the securities, if any, being issued under the Plan are exempt from registration or licensing laws and regulations.

30. <u>Modifications to Plan</u>. The Original Plan has been modified and amended as described herein and in the Plan attached hereto Exhibit "A". In connection therewith, the following shall be added to the definition of Causes of Action in Section 1.12 of the Plan:

*"Causes of Action also specifically includes any and all claims that may be asserted against Larry Struthoff, Xtreme Site Services, LLC, Olmos Contracting I, LLC, Olmos Companies I, LLC, L & B Interests, Inc. or Smithson Valley Materials, including but not limited to any and all claims based on (1) breach of fiduciary duty related to that specific Subcontract Agreement by and between Debtor and Xtreme Site Services, LLC (the "Subcontract"), whether such claims arose pre-petition or post-petition and (2) receipt and/or use of any assets of the Debtor without consideration and Court approval."*

Pursuant to Section 1127 and Bankruptcy Rule 3019, all of the modifications and amendments constitute immaterial modifications, do not adversely change the treatment of the Claim of any Creditor or the interest of any equity security holder who have not accepted the modifications in writing, and they are, therefore: (a) approved by the Court without the necessity for any further notice or balloting, (b) incorporated into the Plan and this Order by reference herein as if fully set forth at length therein and (c) deemed accepted by all creditors and equity security holders who have not accepted in writing the modifications; and (d) deemed accepted by all creditors and equity security holders who have accepted the Plan and/or who are bound by the terms of the Plan.

Finding that the Plan is confirmable for all of the foregoing reasons, this Court hereby

**ORDERS, ADJUDGES and DECREES** that:

A.     <u>Confirmation</u>.  Based on the foregoing findings of fact, and pursuant to Section 1129, it is **ORDERED** that the Plan, as modified by this Order, shall be, and it is hereby, in all things **CONFIRMED**.  In connection herewith, all objections to confirmation of the Plan that have not been withdrawn, resolved, waived or settled are overruled on the merits.

B.     <u>Binding Plan and Order</u>.  The provisions of the Plan and this Order are hereby made binding upon Debtor, Reorganized Debtor, any Creditor of Debtor, whether or not the Claim of such Creditor is impaired under the Plan and whether or not such party or Creditor has accepted the Plan.  Furthermore the provisions of the Plan and this Order, in accordance with the terms of each thereof and hereof, are now, and shall forever afterwards be, binding on the Debtor, Revested Debtor and each Creditor, any other party-in-interest, any person making an appearance in this Case and any other person affected thereby, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, partners, shareholders, representatives, attorneys, beneficiaries, guardians, and similar officers or any persons claiming through or in the right of any such person.

C.     <u>Vesting of Property</u>.  Except as otherwise provided in the Plan, on the Effective Date, in accordance with Sections 1141(b) and 1141(c), all property of Debtor's estate and all other property dealt with by the Plan is hereby vested in Revested Debtor (referred to herein as either the "Debtor" or "Revested Debtor") free and clear of all Claims of Creditors of Debtor, except for the liens set forth in the Plan.  Pursuant to the provisions of the Plan, on the Effective Date, the Debtor shall transfer all of the Causes of Action to the Litigation Trust.

D.     <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction of this case in accordance with Article IX of the Plan, Section 1142 and Bankruptcy Rule 3020(d), including, without limitation, in respect of objections filed to any Claim, and to determine disputes regarding the interpretation, effect and meaning of the provisions of the Plan and this Order.

E.     <u>Administrative Claims</u>.  Pursuant to the Plan, all applications involving Administrative Claims for final compensation of professional persons for services rendered prior to Confirmation and all other requests for payment of Administrative Claims incurred prior to Confirmation pursuant to Section 507(a)(1) or 507(b) of the Code (except for Claims for trade, service, or credit card and all other debt incurred in the ordinary course of business by Debtor) shall, if necessary, be filed no later than ninety (90) days after the Effective Date.

F.     <u>Implementation of Plan and Orders</u>.  Except as otherwise provided in the Plan, the

Revested Debtor is hereby authorized and empowered to issue, execute, deliver, file or record any documents, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan and the matters contemplated by this Order in accordance with their respective terms, whether or not specifically referred to in the Plan or any exhibit thereto and without further application to or order of this Court. Furthermore, pursuant to Bankruptcy Rule 9019 and 11 U.S.C §1123, any settlements described in the Plan or herein are hereby **APPROVED** and the settling parties shall execute any and all documents reasonably necessary to carry out the settlements.

G. <u>Notice of Confirmation Order</u>. The Bankruptcy Clerk shall give notice of the entry of this Order, pursuant to Rules 3020(c) and 2002 (f)(8) to the Debtor, Creditors, and other parties-in-interest. This Order may or may not be attached to a notice thereof, and the bankruptcy clerk may, in his or her discretion, single space and/or reduce the form of this Order, and/or may transmit the Order with or without copies of any exhibits that may be attached hereto. The Debtor may request that such notices otherwise be determined or limited or that notice be made by publication.

H. <u>Bankruptcy Reports</u>. The Debtor, upon the entry of this Order, shall be relieved of all further obligations to file Monthly Operating Reports; however, until this Case is closed by the Court, the Debtor shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request.

I. <u>Executory Contracts</u>. As set forth above, each Executory Contract or unexpired lease entered into prior to the Petition Date shall be deemed rejected as of the Effective Date unless previously assumed or is the subject of a motion assuming such agreements pending before this Court.

J. <u>Closing</u>. Until the Case is closed, any party in interest may commence a proceeding in this Court in respect of any matter as to which jurisdiction has been retained herein.

K. <u>Satisfaction of Claims</u>. Except as otherwise provided in the Plan and this Order, all rights of the holders of Claims in all Classes under the Plan (other than Administrative Claims described in Paragraph E above) which arose prior to the entry of this Order, including without limitation, the right to receive distributions on account of such Claims, shall hereafter be limited solely to the right to receive such distribution as provided in the Plan, and after the date of entry

of this Order, the holders of such Claims which arose prior to the Petition Date shall have no other or further rights or Claims against the Debtor or Revested Debtor.

L.  Non-Taxable Transfers.  Pursuant to Section 1146(c), the issuance, transfer or exchange of a security under the Plan or the revesting or transfer of any real or personal property of the Debtor's bankruptcy estate to the Revested Debtor in accordance with the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax.

M.  Further Findings, Conclusions and Orders by Court.  The Court reserves the right to make further findings of fact, conclusions of law and orders as may be appropriate.

N.  Definitions.  All capitalized terms used herein are deemed to have the meanings set forth in the Plan.  A term in this Order not otherwise defined in the Plan but used or defined in the Bankruptcy Code or Bankruptcy Rules shall have the definition assigned to such term in the Bankruptcy Code or Bankruptcy Rules.

O.  This Order shall be effective immediately upon entry of this order (the "Effective Date" under the Plan) and is not subject to any stay, if any, that may be imposed by the Federal Rules of Bankruptcy Procedure.

# # #

**Submitted by**:
William B. Kingman, SBN 11476200
Law Offices of William B. Kingman, PC
4040 Broadway, Suite 350
San Antonio, TX  78209
(210) 829-1199/Fax: (210) 821-1114
bkingman@kingmanlaw.com
***Counsel for Debtor***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   16-51834 |
| OLMOS EQUIPMENT INC. | § | |
| Debtor | § | CHAPTER 11 PROCEEDING |

## FIRST AMENDED PLAN OF REORGANIZATION OF
## OLMOS EQUIPMENT INC. WITH MODIFICATIONS

COMES NOW OLMOS EQUIPMENT INC., Debtor (hereinafter, "Debtor"), and proposes the following Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code:

### SUMMARY OF PLAN

The Plan provides for the payment and/or satisfaction of the Allowed Claims of all Administrative Claims.  Allowed Priority Claims, Allowed Secured Claims (including, but not limited to, Allowed Claims of Ad Valorem Taxing Authorities) and Allowed Claims of Unsecured Creditors.  Under the Plan, the Administrative Claimants with Allowed Claims, Ad Valorem Taxing Authorities with Allowed Secured Claims, Priority Claimants with Allowed Claims, Secured Creditors with Allowed Claims and Unsecured Creditors with Allowed Claims will receive their respective distributions according to the priority set forth herein in the form of cash from the proceeds of the sale of the Debtor's respective assets and from the proceeds any litigation. There is no guarantee that Unsecured Creditors with Allowed Claims or the Debtor's partners will receive distributions under the Plan. The Plan and its implementation, together with projections of income and expenses and the time frames governing completion of the Plan are found in the Debtor's Disclosure Statement for this Plan of Reorganization pursuant to §1125 of the Bankruptcy Code (the "Disclosure Statement").  The Debtor urges all Creditors and Parties in Interest to consult with their respective legal counsel on the Plan and Disclosure Statement.  In this regard, the Creditors and Parties in Interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination on voting on the Plan. A detailed discussion concerning the voting rights of Creditors is contained in the Disclosure Statement.

**EXHIBIT A**

# ARTICLE I

## Definitions

For the purposes of this Plan, the following terms shall have the following meanings, equally applicable to the singular and plural forms or the gender of the terms defined, unless the context clearly requires otherwise. These terms shall be designated, where such definition is applicable, with capital letters and those definitions shall be enforceable as terms of this Plan in conjunction with the respective matters to which they reference or define:

1.01. <u>Administrative Bar Date</u>: means the date that may be fixed by the Court for filing Administrative Claims in the Case pursuant to Bankruptcy Rule 3003(b); provided, however, if the Court extends the time for filing any given Claim, the date so set shall be the Bar Date with respect to that Claim, but only with respect to such Administrative Claim.

1.02. <u>Administrative Claim</u>: means any costs and/or expenses incurred in the administration of the Case under §503(b) of the Bankruptcy Code that, if allowable, would be entitled to priority under §507(a)(1) of the Bankruptcy Code.

1.03. <u>Allowed Administrative Claim</u>: means an Administrative Claim, proof of which was: (i) filed on or before the deadline to file such Administrative Claim as set forth herein, and a request for payment was filed with the Court and such claim was thereafter allowed by the Court, or (ii) is filed and allowed pursuant to 2.04.01 or 2.04.02 of the Plan.

1.04. <u>Allowed Claim or Interest</u>: means any Claim against or Interest in the Debtor: (i) proof of which was filed with the Court on or before the Bar Date; or (ii) which is scheduled pursuant to Rule 1007(b) and not described as disputed, contingent, or unliquidated; or (iii) the amount and validity of which has been determined by Final Order because of an objection or other proceeding filed with the Court; provided, however, that such Claim or Interest shall only be an Allowed Claim or Interest to the extent and in the amount identified in such Final Order.

1.05. <u>Allowed Secured</u> Claims: means a secured claim against the Debtor: (i) proof of claim which was filed with the Court on or before the Bar Date, or, with leave of Court and without objection by any Party in Interest, late filed, and as to which no objection has been filed by the Debtor or any Party of Interest; or (ii) which is scheduled pursuant to Rule 1007(b) and not described as disputed, contingent or unliquidated; or (iii) as to which the Claim is an Allowed Claim by Final Order; provided, however, that such Claim shall only be an Allowed Claim to the extent and in the amount identified in such Final Order.

1.06.  <u>Allowed Unsecured Claims</u>:  means an Unsecured Claim against the Debtor:  (i) proof of claim which was filed with the Court on or before the Bar Date, or, with leave of Court and without objection by any Party in Interest, late filed, and as to which no objection is filed by the Debtor or any Party in Interest; (ii) as to which the Claim is an Allowed Claim by Final Order; provided, however, that such Claim shall only be an Allowed Claim to the extent and in the amount identified in such Final Order or (iii) scheduled in the list of Unsecured Creditors, as may have been or may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through the closing of this Case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all claims deemed unsecured pursuant to Section 506(a) of the Bankruptcy Code.

1.07.  <u>Avoidance Actions</u>: means any actions commenced, or that may be commenced, before or after the Effective Date pursuant to Chapter 5 of the Bankruptcy Code, including, but not limited to, any transfers of any property to any "Insider" as defined at 11 U.S.C § 101 (31) avoidable under applicable law.

1.08.  <u>Bankruptcy Code or Code</u>:  means Title 11 U.S.C. §101 <u>et</u> <u>seq</u>., the statute of the United States, in effect on the Petition Date, and all amendments thereto, in effect on or before the Confirmation Date, or thereafter, only if specifically provided retroactive by any such amendment and only to the extent such amendment may be valid and constitutional, and does not materially and adversely affect the interest of the Debtor, Creditors or any other Party in Interest. References in this Plan to "Section" or "Sections," unless otherwise specified, shall be to the Bankruptcy Code.

1.09.  <u>Bankruptcy Rule(s)</u>:  means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. §2075 (1978), applicable to the Case.

1.10.  <u>Bar Date</u>:  means December 12th, 2016.

1.11.  <u>Case</u>:  means the captioned Chapter 11 bankruptcy case, as commenced by Olmos Equipment Inc. on its Petition Date.

1.12  Causes of Action: means (i) Avoidance Actions; (ii) any and all liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known

or unknown, in law, equity, or otherwise, including, but not limited to claims arising from any act or omission, including, but not limited to alter ego, piercing of the corporate veil, misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims for such misconduct, and (iii) derivative claims and causes of action, including but not limited to veil piercing, alter ego and other similar causes of action. Causes of Action do not include any Claims owned by a non-Debtor individual or entity relating to a direct and particularized harm or injury which that individual/entity has exclusive standing to pursue. Furthermore, Causes of Action do not include the Debtor's accounts, commercial tort claims, rights of setoff or recoupment, claims, rights and/or damages: (a) relating to sums due and owing to it by its customers, contractors, suppliers, subcontractors and/or third parties (b) relating to Debtor's completed jobs or work in progress and (c) in which Class 1, 2, 3, 4 or 5 Creditors have a security interest or lien.

1.13. <u>Claim(s)</u>: means a "claim" alleged or which is, in fact, due or assertable against the Debtor as defined in §101(5) of the Bankruptcy Code and includes those Claims which are Allowed Claims and all those Claims which are not yet due, or which are unmatured, contingent and otherwise unliquidated.

1.14. <u>Class or Classification</u>: means the particular Class designated in this Plan pursuant to §§1122 and 1129 of the Bankruptcy Code into which a Creditor's Allowed Claim may be included, as provided in this Plan, including Classification for voting, for distributions and for impairment.

1.15. <u>Closing</u>: means the date on which the distributions under the Plan are to become effective.

1.16. <u>Confirmation</u>: means entry by the Court of an order confirming the Plan at or after a hearing pursuant to §1129 of the Bankruptcy Code.

1.17. <u>Confirmation Date</u>: means the date of Confirmation.

1.18. <u>Court or Bankruptcy Court</u>: means United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1.19. <u>Creditor(s)</u>: means all persons or entities having Claims for debts, liabilities and demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code, including, but not limited to, future contingent Claims for unmatured potential liability of Claims of the

United States Government and any agency or department thereof, and any other governmental authority, and whether or not the Creditor has an Allowed Claim.

1.20.   Debtor:   means Olmos Equipment Inc., the Debtor in this proceeding under Chapter 11 of the Bankruptcy Code.

1.21.   Disbursing Agent: means the Debtor or the agent to be appointed to make distributions to its respective Creditors with Allowed Claims pursuant to the provisions of the Confirmed Plan.

1.22.   Distribution Date:   means the date that is at least sixty (60) days after the Effective Date and is the date upon which distributions provided under this Plan are to be made, unless the Disbursing Agent is stayed from making such distributions.

1.23.   Effective Date:   means the date upon which Confirmation becomes a Final Order.

1.24.   Equity Security or Interest:   means a stock ownership in Olmos Equipment Inc. or similar security.

1.25.   Equity Security or Interest Holder:   means an Entity holding an Allowed Equity Security or Interest.

1.26.   Executory Contract(s):   means any contract found to be of the nature referred to in §365 of the Bankruptcy Code as an Executory Contract which requires assumption and/or rejection by the Debtor.

1.27.   Exhibits:   means those items (i) attached to the Plan and incorporated herein by reference; and (ii) attached to the Approved Disclosure Statement and incorporated herein and therein by reference; and (iii) attached to the Order Confirming the Plan and incorporated herein and therein by reference.

1.28.   Final Order or Final Judgment:   means any court entered order of the Court which is conclusive of all matters adjudicated therein regardless of whether the Court order is subsequently the subject of an appeal (unless such order is stayed pursuant to applicable bankruptcy rules).   no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.29.    Initial Distribution Date:    means the date that is at sixty (60) days after the Effective Date and is the first date upon which distributions provided under this Plan are to be made, unless the Disbursing Agent is stayed from making such distributions.

1.30.    Litigation Trust Assets:    means the Causes of Action which shall vest in the Litigation Trust on the Effective Date.

1.31.    Litigation Trust Beneficiaries:    means the Class 6 and 7 Creditors with Allowed Claims and Class 8 Equity Interest Holders and Creditors with Allowed Claims that are deemed subordinated pursuant to Section 510 of the Bankruptcy Code or any applicable law)

1.32.    Non-Insider:    means any Creditor or Equity Interest Holders that is not an insider as that term is defined in Section 101(31) of the Bankruptcy Code.

1.33.    Order Confirming the Plan:    means the Final Order pursuant to §1129 of the Bankruptcy Code, finding that the Debtor's Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation, and which may contain such other provisions, orders, findings, modifications and judgments which by the terms of the Plan or the Bankruptcy Code are appropriate and necessary to carry forward this Plan to Substantial Consummation, including the Exhibits (as may be amended or modified).

1.34.    Order for Relief Date:    means August 12th, 2016, the date on which the United States Court for the Western District of Texas, San Antonio Division entered the order granting relief against the Debtor.

1.35    Petition:    means the Voluntary Petition filed on August 12th, 2016 by the Debtor, under §303 of the Bankruptcy Code commencing this Case.

1.36.    Petition Dates:    means August 12th, 2016, the date on which the Petition was filed.

1.37.    Plan:    means this Plan of Reorganization, including any modifications, amendments or corrections made in accordance herewith under the provisions of the Bankruptcy Code.

1.38.    Priority Claim:    means any Claim other than an Administrative Claim entitled to priority under Section 507(a) of the Bankruptcy Code.

1.39.    Pro Rata or Pro Rata Share:    means the amount which is the result of multiplying the net proceeds or total proposed dividend owing to a named Class of Creditors pursuant to the terms of this Plan, by that fraction in which the numerator is the amount of the particular Creditor's Allowed Claim of the named Class and the denominator is the amounts of all

Creditors' Allowed Claims of the named Class.

1.40.   Professional Fee(s):   means the Allowed Claim for, or the amount charged by attorneys, accountants, appraisers, or other professionals and reimbursement of expenses reasonably incurred in rendering such professional services which are:

(i)    allowed pursuant to the Bankruptcy Code and entitled to priority status in priority to or as Administrative Claims pursuant to §327, 330, 331, 503(b)(3)(D), 507(a)(1), 1102 and 1103 of the Bankruptcy Code; and/or

(ii)   allowed under the Plan after the Effective Date for services rendered after the Effective Date when approved by the Court, and only to the extent reasonable under existing case law either at law or in equity.

1.41.   Rejection Claim:   means any Claim arising by reason of rejection by the Debtor of a contract or lease pursuant to §365 or 1123(b)(2) of the Bankruptcy Code.

1.42.   Revested Debtor:   means Olmos Equipment Inc. as revested with property of the Bankruptcy Estate pursuant to §1141(b) of the Bankruptcy Code.

1.43.   Secured Claim:   means any Allowed Claim that is deemed secured pursuant to §506(a) of the Bankruptcy Code.

1.44.   Settled Claim(s), Settlement(s) or Settle(d):   means Allowed Claims resulting from either the terms of agreements regarding disputed Claims approved by Final Order reached by and between:

(i)    the respective Creditors having disputed, unliquidated, contingent or non-Allowed Claims; and

(ii)   the Revested Debtor, as the case may be, during the Case;

which fully liquidates and renders undisputed any Claim which is thereafter deemed an Allowed Claim.

1.45.   Unsecured Claim:   means any Allowed Claim that is:   (i) deemed unsecured pursuant to §506(a) of the Bankruptcy Code, (ii) for penalty and/or interest on a Tax Claim, (iii) a Rejection Claim, or (iv) not otherwise provided for in the Plan.  Furthermore,  it is an Allowed Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, an Equity Interest or a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor or for

damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim.

1.46. Unsecured Creditor(s):  means all Creditors holding Allowed Unsecured Claims.

1.47. Unsecured Creditors Committee or Committee: means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee, as the same may be reconstituted from time to time.

A term in the Plan not otherwise defined herein but used or defined in the Bankruptcy Code or Bankruptcy Rules shall have the definition assigned to such term in the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE II

## Certain General Terms and Conditions

2.01. Classification, Satisfaction and Treatment of all Claims as defined in the Plan: Various types of Claims are defined in this Plan.  This Plan shall control all matters involving Classification, satisfaction and treatment of all Claims against the Debtor.  The Plan is intended to satisfy, in the manner specified herein, all Claims against the Debtor of whatever character, whether contingent or liquidated, known or unknown, and whether Allowed Claims.  ONLY ALLOWED CLAIMS, INCLUDING, BUT NOT LIMITED TO ALLOWED SECURED AND UNSECURED CLAIMS AND EQUITY INTEREST HOLDERS WILL RECEIVE THE TREATMENT AND DISTRIBUTIONS SPECIFIED BY THE PLAN.  UPON THE EFFECTIVE DATE, THE DEBTOR SHALL BE RELEASED AND DISCHARGED FROM ALL DEBTS AND LIABILITIES INCURRED PRIOR TO THE CONFIRMATION DATE TO THE EXTENT PROVIDED IN SECTION 1141 OF THE BANKRUPTCY CODE AND REVESTED DEBTOR SHALL OWN ALL OF ITS RESPECTIVE PROPERTY (OTHER THAN THE ASSIGNED ASSETS) SUBJECT ONLY TO THE CLAIMS AND INTERESTS OF CREDITORS, IF ANY, AND LIENS AND ENCUMBRANCES, IF ANY, AS SPECIFICALLY SET FORTH IN THE PLAN AND THE LIMITATIONS IMPOSED BY SECTION 1141.

2.02. Disbursing Agent: The Debtor shall serve as Disbursing Agent for all distributions to their respective Creditors with Allowed Claims under the Plan.  The Debtor may appoint such transfer or other agents as it deems necessary and reasonable to assist in making

distributions required by the Plan.

2.03. <u>Time for Filing Claims</u>:

2.03.01. Only Proofs of Claim filed before the Bar Date and for Claims assertable and arising prior to the Order for Relief Date, whether such Claim was listed as disputed, undisputed, contingent, liquidated or unliquidated in the Debtor's schedules filed in the Cases, and all Claims assertable and arising during the Case, excluding Rejection Claims and Administrative Claims for Professional Fees, shall be Allowed Claims, unless the Court disallows a Claim after notice of an objection to the Claim and opportunity for hearing. If a Claimant has already filed a Proof of Claim with the Bankruptcy Clerk, another Proof of Claim need not be filed by such Claimant, unless such previously filed Proof of Claim does not state the total dollar amount of the indebtedness owed to such Claimant, including, without limitation, penalties and/or interest on such Claim. Claims filed pursuant to assumption or rejection of Executory Contracts should also refer to Section VI of the Plan for special requirements regarding their Claims. The Debtor or Revested Debtor reserves the right to dispute or to assert offsets or defenses against any Claims as to amount, liability or status. THE DEBTOR SHALL BE DISCHARGED FROM ANY AND ALL LIABILITY FOR ALL UNSECURED, SECURED AND ADMINISTRATIVE CLAIMS AND CLAIMS OF EQUITY OR INTEREST HOLDERS UPON CONFIRMATION OF THIS PLAN TO THE EXTENT PROVIDED IN SECTION 1141, AND THE CREDITOR OR EQUITY OR INTEREST HOLDER HOLDING SUCH CLAIM SHALL BE FOREVER BARRED FROM ASSERTING SUCH CLAIM AGAINST REVESTED DEBTOR OR REVESTED DEBTOR=S RESPECTIVE ASSETS EXCEPT AS MAY BE OTHERWISE PROVIDED IN SECTION 1141 OF THE BANKRUPTCY CODE.

2.03.02. All Administrative Claims in the Case for Professional Fees under §330, including, but not limited to attorneys' and accountants' fees, which arose on or before the Confirmation Date shall be filed with the United States Bankruptcy Clerk in San Antonio, Texas within ninety (90) days after the Effective Date. If these Claims are not filed on or before the respective deadlines, such Claims shall not be allowed, unless the Court has ordered otherwise or orders otherwise. All other Administrative Claims shall have been or shall be filed before the Administrative Bar Date. If these claims are not filed on before the Administrative Bar Date and a hearing on their allowance is not requested, then such Administrative Claims shall be disallowed, unless the Court has ordered otherwise or orders otherwise. The Debtor or Revested

Debtor reserves the right to dispute or to assert offsets or defenses against any Claims as to amount, liability or status.

2.04. <u>Modifications to the Plan</u>: This Plan may be modified or corrected upon motion of the Debtor pursuant to Section 1127 and Bankruptcy Rule 3019 prior to Confirmation. Modifications or corrections may be made without additional disclosure pursuant to Section 1125 provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or Classes of Claims or Interests. After the Confirmation Date, the Revested Debtor, upon order of the Court and in accordance with Section 1127(b), may remedy any defect or omission or reconcile any inconsistencies in the Plan in such a manner as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE III
## Division of Creditors Into Classes

3.01. <u>Administrative Claimants</u>: Creditors holding Allowed Administrative Claims relative to the Case, including professional fees, post-petition, court approved indebtedness and the U.S. Trustee's Claim for allowed fees.

3.02. <u>Summary of Classes</u>:

1. <u>Class 1</u>: Secured Creditors holding Allowed Property Tax Claims against the Debtor.

2. <u>Class 2</u>: Frost Bank, to the extent it holds an Allowed Secured Claim against the Debtor-Estimated Claim.

3. <u>Class 3</u>: The Texas Work Force Commission, to the extent that it holds an Allowed Secured Claim against the Debtor.

4. <u>Class 4</u>: The Internal Revenue Service, to the extent it holds an Allowed Secured Claim against the Debtor.

5. <u>Class 5</u>: Ally Bank, Caterpillar Financial, Inc. and Financial Pacific Leasing, Inc. to the extent that they hold Allowed Secured Claims.

6. <u>Class 6</u>: Creditors Allowed Priority Claims against the Debtor.

7. <u>Class 7</u>: Creditors Holding Allowed Unsecured Claims.

8. <u>Class 8</u>: Equity Security or Interest Holders and Creditors with Allowed Claims that are deemed subordinated pursuant to Section 510 of the Bankruptcy Code or

any applicable law.

## ARTICLE IV
### Treatment of Classes

4.    Treatment of Classes

4.01.    Unimpaired Classes: Although there are no unimpaired Classes, each holder of an Allowed Administrative Claim shall be paid in full in cash upon the Initial Distribution Date, except as may be otherwise agreed upon in writing between the Debtor and each respective Claimant.  Furthermore, all trade debts, if any, and all other obligations incurred in the normal course of business by the Debtor after the Petition Dates shall be paid in full when due in the ordinary course of business. Such payments shall be distributed from the cash on hand after the Initial Distribution Date.

4.02.    Impaired Classes:   The members of Classes 1 through 8 are impaired and will be entitled to vote to accept or reject their respective treatment under the Plan.

4.02.01.    Class 1: Class 1 Claim pertains to the secured claim of Bexar County (and for those taxing entity which Bexar County collects ad valorem taxes) in the amount of $652,598.05 consisting of the following ad valorem tax accounts:

Account No. 043000170243 in the amount of $30,191.97 for years 2014 through 2016 ad valorem taxes incident to the real property located at 12545 Fischer Rd. (CB 4300 P-4 & P-5B ABS 614 (58.688 ac) & 22.139 ac);

Account No. 153310570200 in the amount of $10,266.57 for years 2014 through 2016 ad valorem taxes incident to the real property located at 800 S. Brownleaf St.; (NCB 15331 Blk 57 Lot P-20);

Account No. 153310580072 in the amount of 1,464.62 for years 2014 through 2016 ad valorem taxes incident to the real property located at 440 Pinn Rd.; (NCB 15331 Blk 58 Lot P-7A (16.7118 ac);

Account No. 153310580060 in the amount of $6,993.73 for years 2014 through 2016 ad valorem taxes incident to the real property located at 440 Pinn Rd (NCB 15331 Blk 58 Lot P-6)

Account No. 153310580073 in the amount of $20,301.61 for years 2014 through 2016 ad valorem taxes incident to the real property located at State Highway 151 (NCB 15331 Blk 58 Lot P-7B);

Account No. 153310580080 in the amount of $11,317.72 for years 2014 through 2016 ad valorem taxes incident to the real property located at State Highway 151 (NCB 15331 Blk 58 Lot P-8);

Account No. 153310580081 in the amount of $48,800.38 for years 2014 through 2016 ad valorem taxes incident to the real property located at 446 Pinn Rd (NCB 15331 Blk 58 Lot P-8A);

Account No. 153310580082 in the amount of $496.07 for 2014 through 2016 ad valorem taxes incident to the real property located at Pinn Rd (NCB 15331 Blk 58 Lot P-7B (0.8992 ac);

Account No. 153310580083 in the amount of $86,680.90 for years 2014 through 2016 ad valorem taxes incident to the real property located at Pinn Rd (NCB 15331 Blk 58 Lot P-7C (12.5000 ac);

Account No. 153320570199 in the amount of $8,766.65 for years 2014 through 2016 ad valorem taxes incident to the real property located at 1566 Pinn Rd (NCB 15332 Blk 57 Lot P-19 (99.223 ac) & P-19B (10.561 ac);

Account No. 915044050040 in the amount of $146,280.63 for year 2011 ad valorem taxes incident to the business personal property located at 440 Pinn Rd.; and

Account No. 915040596300 in the amount of $281,037.20 for year 2015 and 2016 ad valorem taxes incident to the business personal property located at 440 Pinn Rd.

Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Bexar County shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt on each respective properties are paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) on all tax accounts owing to Bexar County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent (or as otherwise provided herein) without the need of Bexar County to file an administrative claim and request for payment. The Debtor/Liquating Trustee shall have sixty (60) days from the Effective Date to object to the ad valorem taxing entities claims; otherwise, such claims are deemed as allowed secured claims in the amount of the Bexar County Proof of Claim.

The Bexar County allowed secured claim shall be paid from the sale of the above referenced real and business personal property as follows:

With regard to the foregoing real properties, Colglazier Properties of San Antonio shall be and is retained as the real estate broker to liquidate all of the real property owned by the Debtor. The ad valorem tax lien shall attach to the respective sale proceeds and from the sales proceeds incident to each parcel of real property identified above, the ad valorem taxes then owed on each such tax account shall be paid in full immediately upon closing of sale by the closing agent prior to disbursements to any other person or entity, (with provision for proration and lien retention of any then current year taxes). All of the foregoing parcels of real property shall be sold and the sales close within eighteen (18) months of the Effective Date. In the event any of the real property parcels remain unsold at the expiration of eighteen (18) months from the Effective Date, Bexar County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtor.

With regarding to the business personal properties, PPL Group, LLC and Myron Bowling Auctioneers, Richie Brothers Auctioneers (America) Inc. and Mel Davis Auctions have been retained to liquidate all of the Debtor's business personal property. The ad valorem tax lien shall attach to the respective sale proceeds and from the sale incident to the business personal property the Debtor shall pay the Bexar County ad valorem tax debt incident to the business personal property for tax years 2016 and prior within fifteen (15) days of receipt of the net sales proceeds and prior to disbursement of these sale proceeds to any other person or entity. The tax debt shall be prorated against each items or lot of equipment or vehicle based on the gross sale price of each item or lot. In addition to the payment of the delinquent ad valorem taxes for years 2016 and prior, prior to disbursement of any net sales proceeds to any other person or entity, One Hundred Thirty-eight Thousand and No/100th Dollars ($138,000.00) of net sales proceeds shall be set aside by the Debtor in a segregated account as adequate protection for the Bexar County secured claim with respect to the 2017 ad valorem taxes. The Bexar County ad valorem tax lien shall attach to these proceeds to the same extent and with the same priority as the tax lien now holds against the personal property of the Debtor. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the Bexar County claim for year 2017 ad valorem taxes nor a cap on the amount Bexar County may be entitled to receive. The claim and

lien of Bexar County shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such lien. These funds may be distributed upon agreement between counsel for Bexar County and the Debtor or by subsequent Order of the Court duly noticed to counsel for Bexar County.

4.02.02. <u>Class 2</u>: The Debtor shall, upon:

(a) the consummation of each sale of all or a portion of the Debtor's assets on which the Class 2 Creditor has a lien or in which it has a security interest, or

(b) the collection of funds on which the Class 2 Creditor has a lien or in which it has a security interest,

pay (according to lien/security interest priority) the Class 2 Creditor its share of the sale proceeds or collected funds in order to partially or fully satisfy the Class 2 Creditor's Allowed Claims. If a sale is not going to generate enough proceeds to fully satisfy the Class 2 Creditor's Claim, such Class 2 Creditor must approve such sale in writing.

4.02.03. <u>Class 3</u>: The Debtor shall, upon:

(a) the consummation of each sale of all or a portion of the Debtor's assets on which the Class 3 Creditor has a lien or in which it has a security interest, or

(b) the collection of funds on which the Class 3 Creditor has a lien or in which it has a security interest,

pay the Class 3 creditor its share of the sale proceeds or collected funds in order to partially or fully satisfy the Class 3 Creditors' Allowed Claims. If a sale is not going to generate enough proceeds to fully satisfy the Class 3 Creditor's Claim, such Class 3 Creditor must approve such sale in writing.

While the property on which the Class 3 Creditor has a lien or security interest is being marketed (for a period not to exceed eighteen months), the Revested Debtor shall, commencing on the Distribution Date and continuing monthly thereafter for a period of an additional fifty-two (52) consecutive months after the Distribution Date, pay the Class 3 Creditor, the Texas Workforce Commission, a monthly payment determined by amortizing the Allowed Claim over a period of 53 months and applying an interest rate of 4.5% per annum. If a property on which the Class 3 Creditor has a lien or in which it has a security interest is sold and the Class 3 Creditor receives proceeds from the sale, such proceeds shall be treated as a prepayment of monthly payment obligations under this section. The prepayment of monthly payments shall

abate the obligation to continue making monthly payments until such time as the credit for a prepayment no longer is sufficient to satisfy the monthly payment obligations to which it has been credited, in which case the monthly payments shall resume.

Furthermore, a failure by the Debtor to make either a Class 3 or Class 6 payment to the Class 3 Creditor pursuant to the terms of the Plan shall be an event of default; as to the Class 3 Creditor, there is an event of default if payment is not received by the 15th day of each month; if there is a default to the Class 3 Creditor, the Class 3 Creditor must send written demand for payment to the Debtor and said payment must be received by the Class 3 Creditor within fifteen (15) days of the date of the demand letter; Debtor can receive up to five (5) notices of default from the Class 3 Creditor; however, on the fifth notice of default from the Class 3 Creditor, the fifth default cannot be cured, and the Class 3 Creditor may accelerate its Allowed Claim(s), past or future, and declare the outstanding amount of such claim(s) to be immediately due and owing, and pursue any and all available state and federal rights and remedies.

Since the Plan is a liquidating plan, it shall not create any discharge with respect to any taxes or debts related thereto owed by the Debtor.

The rights of setoff and recoupment of the State of Texas under statutory and common law are expressly preserved and shall not be altered or impaired.

Nothing set forth in the Plan or Confirmation Order shall affect or impair any rights of the State of Texas to pursue any claims, rights, causes of action or any other it may have against any non-debtor third parties, including rights of setoff.

All Administrative Claims of the State of Texas shall be paid in full including taxes, penalties and interest, within 60 days of the Effective Date. The State of Texas shall not be required to file any proof of claim, motion or request for payment in order to be paid any Administrative Claims that arise in the ordinary course of the Debtor' business, including post-petition taxes incurred by the Debtor after the Petition Date (in accordance with section 503(b)(1)(B)-(D) of the Bankruptcy Code), which shall be paid in accordance with section 1129(a)(9)(A) of the Bankruptcy Code or, if not due on the Effective Date, in the ordinary course of business in accordance with applicable law. The Reorganized Debtor will timely file all required post-petition tax returns and will timely pay all post-petition taxes owed to the State of Texas, including any post-petition penalties and interest, which accrue subsequent to the Petition Date or following the confirmation of the Plan in the ordinary course of business.

4.02.04.     Class 4: The Debtor shall, upon:

(a)  the consummation of each sale of all or a portion of the Debtor's assets on which the Class 4 Creditor has a lien or in which it has a security interest, or

(b) the collection of funds on which the Class 4 Creditor has a lien or in which it has a security interest,

pay (according to lien/security interest priority) the Class 4 creditor its share of the sale proceeds or collected funds in order to partially or fully satisfy the Class 4 Creditors' Allowed Claims. If a sale is not going to generate enough proceeds to fully satisfy the Class 4 Creditor's Claim, such Class 4 Creditor must approve such sale in writing.

While the property on which the Class 4 Creditor has a lien or security interest is being marketed (for a period not to exceed eighteen months), the Revested Debtor shall, commencing on the Distribution Date and continuing monthly thereafter for a period of an additional fifty-two (52) consecutive months after the Distribution Date, pay the Class 4 Creditor, the Internal Revenue Service, a monthly payment determined by amortizing the Allowed Claim over a period of 53 months and applying an interest rate as determined on the Petition Date under 26 U.S.C. sec. 6621.  If a property on which the Class 4 Creditor has an lien or in which it has a security interest is sold and the Class 4 Creditor receives proceeds from the sale, such proceeds shall be treated as a prepayment of monthly payment obligations under this section.  The prepayment of monthly payments shall abate the obligation to continue making monthly payments until such time as the credit for a prepayment no longer is sufficient to satisfy the monthly payment obligations to which it has been credited, in which case the monthly payments shall resume.

This plan provision will have no effect on the IRS's ability to assess taxes and file liens against any other parties responsible for the payment of Debtor's Class 4 Creditors. Furthermore, any payments of the Class 4 Allowed Claim made by any responsible parties other than the Debtor shall be applied first to the actual tax owed by the Debtor and then to accrued interest and then to accrued penalties, if any.

Furthermore, a failure by the Debtor to make either a Class 4 or Class 6 payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th day of each month; if there is a default to IRS, IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; Debtor can receive up to five

(5) notices of default from the IRS; however, on the fifth notice of default from the IRS, the fifth default cannot be cured, and the IRS may accelerate its Allowed Claim(s), past or future, and declare the outstanding amount of such claim(s) to be immediately due and owing, and pursue any and all available state and federal rights and remedies.

A failure to file a federal tax return shall be an Event of Default. If this Event of Default is not cured within fifteen (15) days after the sending a written notice of default from a tax creditor, then a tax creditor may (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court.

Finally, the IRS is bound by the provisions of the confirmed plan and is barred under section 1141 from taking any collection action against Debtor for pre-petition claims during the duration of the plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. sec. 6503(h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS have been made; or, (2) 30 days after the date of a demand letter (described above) for which the Debtor failed to cure the default.

  4.02.05. <u>Class 5</u>: The Class 5 Creditors' collateral shall either be surrendered to the Class 5 Creditors or will be sold and the Allowed Claims shall be paid in full.

  4.02.06. <u>Class 6</u>: Commencing on April 30th, 2017 and continuing on each April 30th, June 30th, September 30th and December 31st of each year until the Class 6 Creditors' Allowed Claims are paid in full, the Debtor or Litigation Trustee, as the case may be, shall distribute unencumbered funds generated from:

  (a) the sale of any assets;

  (b) the collection of any receivables; or

  (c) any claims or litigation

to the Class 6 Creditors on a pro rata basis Any payments of the Class 6 Allowed Claims made by any responsible parties other than Debtor Olmos Equipment, Inc. shall be applied first to the actual tax owed by Olmos Equipment and then to accrued interest (applying an interest rate as determined on the Petition Date under 26 U.S.C. sec. 6621) and then to accrued penalties that are classified as Class 6 Claims, if any.

  4.02.07. <u>Class 7</u>: Only after fully satisfying the Class 6 Creditors' Allowed

Claims, then, commencing on April 30th, 2017 and continuing on each April 30th, June 30th, September 30th and December 31st of each year until the Class 7 Creditors' Allowed Claims are paid in full, the Debtor or Litigation Trustee, as the case may be, shall distribute unencumbered funds generated from:

    (a)  the sale of any assets,

    (b)  the collection of any receivables, or

    (c)  any claims or litigation,

to the non-insider Class 7 Creditors on a pro rata basis.

After all Non-Insider Class 7 Creditors are paid in full, then the Debtor shall be authorized to satisfy the Allowed Claims of Class 7 Creditors who are Insiders (as that term is defined in Section 101(31) of the Bankruptcy Code and includes Larry Struthoff, Xtreme Site Services, LLC, Olmos Contracting I, LLC, Olmos Companies I, LLC, L & B Interests, Inc. and Smithson Valley Materials).

    4.02.08.        <u>Class 8</u>: After all of the Allowed Class 1 through 7 Claims are paid in full, the Debtor or the Litigation Trustee, as the case may be, shall distribute any such funds to the Class 8 equity security or interest holders and Creditors with Allowed Claims that are deemed subordinated pursuant to Section 510 of the Bankruptcy Code or applicable law on a pro rata basis.

**ARTICLE V.**

**Means for Execution of the Plan**

5.01.    The Debtor is empowered to take such actions as may be required to effect the Plan, and shall execute such documents, as may be reasonable and necessary to consummate the Plan. Furthermore, Larry Struthoff, Xtreme Site Services, LLC, Olmos Contracting I, LLC, Olmos Companies I, LLC, L & B Interests, Inc. and Smithson Valley Materials shall commit to contribute enough funds (not to exceed $50,000.00) to ensure that the Debtor satisfies all Chapter 11 Administrative Claims in this case. In the event that Larry Struthoff or the related entities do pay any portion of the Chapter 11 Administrative Claims, the Revested Debtor shall reimburse them for the amount paid in the event that the Revested Debtor subsequently collects funds that are not encumbered by the liens or security interests of the Class 1, 2, 3, 4 or 5

Creditors. However, Larry Struthoff, Xtreme Site Services, LLC, Olmos Contracting I, LLC, Olmos Companies I, LLC, L & B Interests, Inc. and Smithson Valley Materials shall not be reimbursed from funds recovered from any of them by the Litigation Trust.

5.01.01. <u>Cash Distributions Under the Plan</u> The Revested Debtor, in its sole discretion and pursuant to the terms of the Plan, will make the first transfers and distributions required by this Plan upon the later to occur of (i) the date set forth in Article IV above, or (ii) as soon as practicable after a Final Order is entered allowing the holder's Claim or Interest, or (iii) as otherwise provided by order of the Court. No distribution or transfer shall be made, however, which would result in any Creditor receiving more than is specifically provided for in this Plan. The Debtor will be empowered to take such actions as may be required to effect the Plan, and shall execute such documents, as may be reasonable and necessary to consummate the Plan.

5.01.02. <u>Manner of Payments:</u> Payments to be made by the Disbursing Agents pursuant to the Plan shall be made by check drawn on a domestic bank from a domestic bank.

5.02. <u>Cramdown</u>: The Court may confirm the Plan even though fewer than all Classes of Creditors or Class of Interest holders have accepted the Plan. In the event that any impaired class of Creditors or Class of Interest holders fails to accept the Plan by adequate vote as described in Sections 1126 and 1129(a), the Debtor may request the Court to confirm the Plan in accordance with Section 1129(b) of the Code. Furthermore, to the extent that the Plan does not embody certain provisions setting forth the circumstances apprehended by Section 1129(b), the Debtor may amend or modify the Plan to include such provisions should it become necessary to confirm the Plan under cramdown.

5.03. <u>Unclaimed Distributions:</u> In the event that either Disbursing Agent is unable to locate a holder of a Claim or Interest in order to make such distribution as herein provided, the Disbursing Agent shall hold such distribution for the benefit of such Claim until all payments and transfers are made pursuant to this Plan, then such distributions or property shall be paid Pro Rata to the members of the last Class that the Disbursing Agents paid but did not completely and fully satisfy the Class members' Allowed Claims.

5.04. <u>Documentation:</u> The appropriate documentation for each transaction contemplated herein shall be subject to the approval of the Court as requested.

5.05. <u>Funding of the Plan:</u> The distributions and payments provided for in the Plan

shall be funded by the Debtor's cash on hand at Confirmation, the Debtor's collection of receivables and the proceeds from the sale of the Debtor's assets. Colglazier Properties of San Antonio shall serve as the real estate broker for the Debtor's real property. The Debtor's personal property shall be sold by private sale, Richie Brothers Auctioneers, Mel Davis Auctions and/or another equipment liquidator. Furthermore, the Debtor's Causes of Action shall be contributed to the Litigation Trust described below.

5.06.   The Litigation Trust:

(a)      Establishment of the Litigation Trust.   On the Effective Date, the Litigation Trust shall be established pursuant to the Trust Agreement (described below) for the purposes of administering the Litigation Trust Assets and making distributions to the Litigation Trust Beneficiaries which are or may be Allowed, as provided in the Plan.   On the Effective Date, the Trust Agreement shall be executed and all other necessary steps shall be taken to establish the Litigation Trust and the beneficial interests therein.

(b)      Trust Agreement. The Trust Agreement shall be substantially in the form of the "Trust Agreement" attached hereto as Exhibit "A", which contains provisions customary to documents utilized in comparable circumstances.

(c)      Litigation Trust Assets.   The assets of the Litigation Trust shall consist of the Litigation Trust Assets.   On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, the Litigation Trust Assets shall automatically vest in the Litigation Trust, free and clear of all Liens, Claims and encumbrances, for the benefit of the Litigation Trust Beneficiaries.

(d)      Purpose of the Litigation Trust.   The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets to the Litigation Trust Beneficiaries (who are the class, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or to engage in the conduct of a trade or business.   The Litigation Trust, through the Litigation Trustee, shall (i) collect and reduce the assets of the Litigation Trust to Cash, (ii) prosecute, settle and otherwise administer the Litigation Trust Assets, (ii) make distributions to the beneficiaries of the Litigation Trust in accordance with the terms of this Plan and the Trust Agreement and (iv) take all such other actions as may be reasonably necessary to accomplish the purposes of this section 6.6 of the Plan, as more specifically set forth in the Trust Agreement.

(e) <u>The Litigation Trustee.</u>  The Litigation Trustee shall be Ronald Hornberger and shall be vested with sole and exclusive standing to prosecute, settle and otherwise administer all Litigation Trust Assets transferred to the Litigation Trust, without the need for Bankruptcy Court approval or any other notice of approval, except as set forth in the Trust Agreement.  The Trustee shall be exempt from giving any bond or other security in any jurisdiction. The Litigation Trust Assets do not include any Claims owned by a non-Debtor individual or entity which that individual/entity has standing to pursue.

(f) <u>Nontransferability of Litigation Trust Interests.</u>  Beneficial interests in the Litigation Trust shall not be transferable, except as otherwise provided in the Trust Agreement.

(g) <u>Costs and Expenses of the Litigation Trust and the Litigation Trustee.</u>  All costs and expenses of the Litigation Trust, including the reasonable fees and expenses of the Litigation Trustee and any professionals retained by the Litigation Trustee, shall be paid solely out of the Litigation Trust Assets.  The Litigation Trustee is authorized to borrow any funds necessary to administer the Litigation Trust Assets, so long as repayment of such funds will be made from recoveries obtained by the Litigation Trustee from the Litigation Trust Assets.

(h) <u>Compensation for Litigation Trustee.</u>  The compensation for the Litigation Trustee and the members of the Trust Board shall be as set forth in the Trust Agreement.

(i) <u>Distributions.</u>  The Litigation Trustee shall reduce the Litigation Trust Assets to Cash and make interim distributions of Cash to Litigation Trust beneficiaries holding Allowed Claims as set forth above.

(j) <u>Trust Certificates.</u>  The beneficial interests in the Litigation Trust shall not be represented by certificates, receipts, or in any other form or manner, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee, as set forth in the Trust Agreement.

(k) <u>Retention and Compensation of Professionals by the Trustee.</u>  Subject to the terms of the Trust Agreement and any necessary approvals contained therein, the Trustee may retain counsel and other professionals without Court approval but consistent with the provisions of Section 327 of the Code.  The Trustee can reasonably compensate such professionals out of the Litigation Trust Assets, on such terms as the Trustee deems appropriate.

(l) <u>Federal Income Tax Treatment of the Litigation Trust.</u>

(1)     For all federal income tax purposes, all parties (including the Debtor, the Litigation Trust, the Litigation Trustee and the Litigation Trust beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust beneficiaries, whether their Claims are Allowed on or after the Effective Date, as (a) a transfer of the Litigation Trust Assets directly to those holders of Allowed Equity Interests receiving interests in the Litigation Trust (other than to the extent allocable to Disputed Claims), followed by (b) the transfer by such Persons to the Litigation Trust of the Litigation Trust Assets in exchange for beneficial interests in the Litigation Trust (and in respect of the Litigation Trust Assets allocable to the Disputed Claims and Administrative Reserve, as a transfer to the Disputed Claims and Administrative Reserve by the Debtor). Accordingly, those holders of Allowed Equity Interests receiving Litigation Trust interests shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets. The foregoing treatment also shall apply, to the extent permitted by applicable law, for state and local income tax purposes.

(2)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS, upon audit, or otherwise if not contested by the Litigation Trustee), the Litigation Trustee shall (i) file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Trust Agreement and this section 6.6 of the Plan and (ii) annually send to each holder of a Litigation Trust interest a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders and parties to report such items on their federal income tax returns. The Litigation Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any governmental unit.

(3)     As soon as possible after the Effective Date, but in no event later than ninety (90) days thereafter (i) the Litigation Trustee will determine the fair market value as of the Effective Date of all assets transferred to the Litigation Trust and (ii) the Litigation Trustee shall apprise, in writing, the Litigation Trust beneficiaries of such valuation. In connection with the preparation of the valuation contemplated hereby, the Litigation Trustee shall be entitled to retain such professionals and advisors as the Litigation Trustee shall determine to be appropriate

or necessary, and the Litigation Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary in connection therewith. The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Litigation Trustee in connection therewith.

(4)     The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(5)     The Litigation Trustee shall be responsible for payments, out of the Litigation Trust Assets and the proceeds thereof, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.

(6)     The Litigation Trustee may require any of the Litigation Trust beneficiaries to furnish to the Litigation Trustee its Employer or Taxpayer Identification Number as assigned by the IRS and the Litigation Trustee may condition any distribution or payment to any of them upon receipt of such identification number.

(m)     <u>Indemnification</u>.  From and after the Effective Date, the Litigation Trustee shall be indemnified and held harmless by the Litigation Trust, to the fullest extent permitted by law and to the extent of its assets legally available for that purpose, from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including reasonable fees and expenses of attorneys and other advisors and any court costs incurred by the Litigation Trustee) or liability by reason of anything the Litigation Trustee did, does, or refrains from doing for the business or affairs of the Litigation Trust, except to the extent that the loss, cost, damage, expense or liability resulted (x) from the Litigation Trustee's gross negligence, bad faith, willful misconduct or knowing violation of law or (y) from an act or omission from which the Indemnified Person derived an improper personal benefit.   To the extent reasonable, the Litigation Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Litigation Trustee if he is or is threatened to be named or made a defendant or a respondent in a proceeding should change concerning the business and affairs of the Litigation Trust.  The Litigation Trust may purchase fiduciary liability insurance for the benefit of the Litigation Trustee.

(n)     Dissolution.

(1)     The Litigation Trust shall commence on the Effective Date and terminate no later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by the Litigation Trustee or any other party in interest, may extend the term of the Litigation Trust if it is necessary to the liquidation of the Litigation Trust Assets. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) days prior to the expiration of each extended term; *provided, however*, that in no event shall the term of the Litigation Trust extend past the tenth (10th) anniversary of the Effective Date; *provided further* that neither the Trust Agreement nor the continued existence of the Litigation Trust shall prevent the Litigation Trustee from closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code and obtaining a final decree pursuant to Bankruptcy Rule 3022.

(2)     The Litigation Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and (ii) the Litigation Trustee has administered all Litigation Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Trust Agreement and this Plan.

If at any time the Litigation Trustee determines that the expense of administering the Litigation Trust is likely to exceed the value of the remaining Litigation Trust Assets, the Litigation Trustee shall (i) donate any balance to a 501(c)(3) charitable organization and (ii) dissolve the Litigation Trust.

5.07.   Dissolution of Committee and Cessation of Fee and Expense Payments. The Committee, and any other statutory committee appointed in the Debtor's Chapter 11 Case, shall be dissolved on the Effective Date.   Neither the Debtor the Litigation Trustee shall be responsible for paying any fees or expenses incurred by the Committee (or any other committee) after the Effective Date. Pursuant to the provisions of the Litigation Trust Agreement, prior to and during the period between the entry of the Confirmation Order and the Effective Date, the Committee shall attempt to negotiate the terms of an agreement relating to the Litigation Trustee's compensation.

5.08.   Restructuring and Other Corporate Actions and Transactions.

(a)    Dissolution of Debtor.  As soon as all assets are sold and all funds are distributed and as soon as final tax returns are filed, all Disputed Claims are resolved and all Allowed Claims are paid in full as provided for in the Plan, Debtor shall be wound down and shall cease to exist as a legal entity.

(b)    General Corporate Actions.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects.  Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

(c)    Officers, Managers and Board of Directors of the Debtor. On the date the Debtor is dissolved as provided for in the Plan, all officers, managers and directors of the each Debtor shall be automatically deemed to have resigned from such positions from the Debtor without further notice.

5.09.   Controversy Concerning Impairment:   In the event of a controversy as to whether any Creditor(s) or Interest holders or classes of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and hearing, determine such controversy.  To the extent that the Court finds that a Class of Creditors or a Creditor(s) is impaired where designated as unimpaired, that Creditor or Class of Creditors may file a vote, notwithstanding other provisions, at the time of Confirmation.  If determined to be unimpaired, the Creditor or Class of Creditors shall be deemed to accept the Plan as provided in Section 1126(f).

## ARTICLE VI

### Executory Contracts and Unexpired Leases

6.01.   The Debtor rejects, pursuant to Section 365, each and every Executory Contract as of the Confirmation Date, except those specifically assumed hereby or which are the subject of a motion to assume at the time of the confirmation hearing.  In connection herewith, the Debtor shall, upon the sale of their assets, assume and assign various executory contracts described in the asset purchase agreement approved by the Bankruptcy Court.

6.02.   Rejection Claims must be filed with the United States Bankruptcy Clerk in San Antonio, Texas within thirty (30) days after Confirmation.  Any objections to such Rejection Claims shall be filed as provided in Article VIII.

## ARTICLE VII

**Effect of Confirmation and Binding Effect**

7.01.    Upon the Order Confirming the Plan becoming a Final Order, the provisions of the Plan will bind the Debtor, the Revested Debtor and all Creditors, all governmental agencies or entities and parties-in-interest, whether or not they accept the Plan.

7.02.    Except as otherwise expressly provided in the Plan and as long as the Litigation Trust exists, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtor, the Litigation Trust, the Litigation Trustee and  the Debtor's assets and the Litigation Trust Assets (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, its assets, the Litigation Trust, the Litigation Trustee, or the Litigation Trust Assets with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, its assets the Litigation Trust, the Litigation Trustee or the Litigation Trust Assets, as applicable with respect to any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or Litigation Trust, or against the property or interests in property of the Debtor or Litigation Trust with respect to any such Claim or Equity Interest.

7.03 Unless otherwise provided, all injunctions or stays arising under or entered during the Debtor's Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  However, nothing shall preclude Embrey Builders, LLC ("Embrey") or Dwell at Legacy, LLC ("DAL") from prosecution of claims against Debtor in Embrey Builders, LLC vs. Olmos Equipment, Inc., Cause No. 2016CI02162, pending in the 288th Judicial District Court of Bexar County, Texas ("State Court Suit"), relating to a project known as "Dwell at Legacy" in San Antonio, Texas and nothing shall preclude the Debtor and/or its insurer to asserting defenses, objections and/or rights relating to such claims. To the extent Embrey and/or DAL's claims in the State Court Suit are successful, such claims shall be satisfied only by insurance proceeds from Debtor's applicable insurance coverage.

7.04.    Following the Effective Date and until the Chapter 11 case is closed, converted, or dismissed, the Revested Debtor shall pay all fees owing pursuant to 28 U.S.C. § 1930(a)(6) by

the last day of the calendar month following the calendar quarter for which the fee is owed. Following the Effective Date, disbursements for purposes of calculating the fees under 28 U.S.C. § 1930(a)(6) will include all disbursements by or on behalf of the Revested Debtor and the Liquidating Trust. For the period following the Effective Date until the Chapter 11 case is closed, converted, or dismissed, the Revested Debtor will no longer need to file monthly operating reports but will file quarterly reports using a format provided by the United States Trustee. The post-confirmation quarterly reports shall include all of the receipts, disbursements, and other information required on the quarterly report form for both the Revested Debtor and Liquidating Trust.

## ARTICLE VIII

### Procedures for Resolving Disputed Claims and Interests
### and Disputed Claims Reserve

8.01.   The Revested Debtor or any other Party in Interest may object to any Claim. All objections to Claims must be filed within ninety (90) after the Effective Date, except with respect to those Claims otherwise provided for in Article VI upon which all objections must be filed within ninety (90) days after such Claims are filed.

8.02.   The objecting party shall litigate to Final Judgment, settle or withdraw objections to disputed Claims. All Professional Fees of the Revested Debtor or Disbursing Agents incurred in the prosecution of objections to Claims shall be paid as expenses of the Plan.

8.03.   In determining the amount of the distribution due the holders of Allowed Claims prior to the resolution of all Claim disputes, the appropriate Pro Rata calculations pursuant to the Plan shall be made as if all disputed Claims were Allowed Claims in the full amount claimed by the holders thereof; provided however, that the Court may estimate a lesser amount for a Claim holder to be used in such Pro Rata calculation or the Disbursing Agent and the disputed Claim holder may agree upon a distribution in an amount less than that claimed.

8.04.   The Disbursing Agent shall hold and separately account for distributions in respect to disputed Claims under paragraph 8.03 (the "Disputed Claims Reserve").

8.05.   At such time as a disputed Claim becomes an Allowed Claim, the distributions

reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim. In the event that, or to the extent that, a disputed Claim is disallowed, the distributions reserved for such Claim shall be released from the Disputed Claims Reserve for Pro Rata distribution to Allowed Claims within 20 days of the determination it is an Allowed Claim.

8.06.   Except as the Court may order otherwise pursuant to paragraph <u>8.03</u> hereof, no payments or distribution shall be made with respect to all or any portion of a disputed Claim unless and until all objections to that Claim have been determined by Final Order. Payments and distributions to each holder of a disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan with respect to the Class of Claim in which the respective holder is a member.

**ARTICLE IX**

**Retention of Jurisdiction**

The Court shall retain jurisdiction over this Case after Confirmation pursuant to, and for the purposes set forth in, Section 1127(b) for the following purposes:

9.01.   To determine all controversies relating to or concerning the Classification, allowance or satisfaction of Claims;

9.02.   To determine any and all pending applications for the rejection or assumption and/or assignment, as the case may be, of Executory Contracts and unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

9.03.   To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court, including, without limitation, and any proceeding commenced for the purpose of avoiding, recovering or preserving for the benefit of the estates or the Revested Debtor any transfer of property, obligation incurred by the Debtor, lien or set-off.

9.04.   To determine any dispute arising under this Plan and to make such orders as are necessary or appropriate to carry out the provisions of the Plan including to approve or determine controversies concerning closing documentation;

9.05.   To grant extensions of any deadlines set herein;

9.06.   To hear and determine all requests for compensation and/or reimbursement of expenses which may be made after Confirmation;

9.07.   To enforce all release provisions under this Plan;

9.08.   To modify the Plan pursuant to paragraph 2.05. and the Bankruptcy Code; and

9.09.   In addition, and at any time, the Court may make such orders or give such direction as may be appropriate under Section 1142.

## ARTICLE X

## Default Provision

10.01.  Procedure for Default:

In the event of a non-monetary or monetary default by the Disbursing Agent under the Plan, the affected Creditor shall provide written notice of such default to:

> OLMOS EQUIPMENT INC.
> c/o. Larry Struthoff
> PO Box 769020
> San Antonio, TX 78245
>
> **AND**
>
> William B. Kingman
> Law Offices of William B. Kingman, P.C.
> 4040 Broadway, Suite 350
> San Antonio, Texas  78209
>
> **AND**
>
> Eric B. Terry
> Eric Terry Law, PLLC
> 4040 Broadway, Suite 350
> San Antonio, Texas  78209

by United States certified mail-return receipt requested, and by United States first class mail, postage prepaid.  The Disbursing Agents shall have thirty (30) days from the earlier to occur of: (i) the date of receipt of the written notice sent by certified mail, or (ii) the date of receipt of the written notice sent by first class mail to cure the default (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail).  In the event the applicable Disbursing Agent does not cure the default within the thirty (30) day period provided herein, the affected Creditor shall be entitled to pursue its state and/or federal law remedies without further notice or

hearing before the Court.

## **ARTICLE XI**

### **Closing**

11.01.  <u>Provisions for Closing Case.</u>  Within fifteen (15) days of the date upon which the Disbursing Agents make the first and final distribution to all Creditors in Class 1 (such date being the date of the substantial consummation of the Plan), the Revested Debtor may apply to the Bankruptcy Court for entry of a Final Decree in the Cases.  Pursuant to Section 350 and Bankruptcy Rule 3022, the Final Decree shall close the Cases and make provisions by way of injunction or otherwise as may be equitable.

Respectfully submitted on April 21st, 2017

**OLMOS EQUIPMENT INC.**

By: _____*/s/Larry Struthoff*_____

      Larry Struthoff, authorized agent for
      Olmos Equipment Inc.

**OLMOS EQUIPMENT, INC. LITIGATION TRUST AGREEMENT**

**EXHIBIT A**

**THIS LITIGATION TRUST AGREEMENT** (this "***Agreement***"), dated as of _____, 2017, is entered into by and among:

1. OLMOS EQUIPMENT, INC., "***Debtor***" ; and

2. Ronald Hornberger, as trustee (the "***Original Trustee***")

### RECITALS

**WHEREAS**, on August 12, 2016 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") with the United States Bankruptcy Court for the Western District of Texas (the "***Bankruptcy Court***"). The Debtor's case is being administered in the Bankruptcy Court under Case No. 16-51834 (the "***Chapter 11 Case***");

**WHEREAS**, on April ___, 2017, the Bankruptcy Court entered an order [Docket No. _____] (the "***Confirmation Order***") confirming the Debtor's First Amended Plan of Reorganization with Modifications filed in the Chapter 11 Case (including any supplement to such Plan and the exhibits and schedules thereto, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions thereof, the "***Plan***");

**WHEREAS**, this Agreement is executed in order to establish a litigation trust (the "***Litigation Trust***") pursuant to, and to effectuate certain provisions of, the Plan and the Confirmation Order;

**WHEREAS**, the Trustee (defined below) will hold and administer the Litigation Trust Assets (defined below) for the benefit of the Litigation Trust Beneficiaries (defined below) as contemplated by the Confirmation Order

**WHEREAS**, the Litigation Trust is established for the sole purpose of liquidating and distributing the Litigation Trust Assets pursuant to the Plan and this Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust;

**WHEREAS**, the Trustee was duly appointed as a representative of the Debtor's estate pursuant to section 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code;

**WHEREAS,** the Litigation Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and the advance ruling guidelines contained in Rev. Proc. 94-95, 1994-2 C.B. 684;

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan and the Confirmation Order, the Debtor and the Original Trustee, intending to be legally bound, agree as follows:[1]

---

[1] Capitalized terms used but not defined in this Agreement shall have the meanings ascribed to them in the Plan.

# ARTICLE 1

## ESTABLISHMENT OF THE LITIGATION TRUST

1.1     Establishment of Litigation Trust and Appointment of Original Trustee.

Pursuant to the Plan and the Confirmation Order, the Debtor and the Original Trustee hereby establish a trust which shall be known as the "***Olmos Equipment Inc. Litigation Trust***" on behalf of and for the benefit of the Litigation Trust Beneficiaries (defined below).

The Original Trustee (Ronald Hornberger) is hereby appointed as trustee of the Litigation Trust effective as of the Effective Date of the Plan (the "***Effective Date***") and agrees to accept and hold the Litigation Trust Assets (defined below) pursuant to this Agreement, the Confirmation Order or the Plan (collectively, the "***Litigation Trust Assets***"), in trust for the benefit of holders of Class 6 and 7 Creditors and Equity Interest Holders Creditors with Allowed Claims that are deemed subordinated pursuant to Section 510 of the Bankruptcy Code or any applicable law (the "***Litigation Trust Beneficiaries***"). The Original Trustee and each successor trustee serving from time to time hereunder (the "***Trustee***") shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Litigation Trust.

1.2     Transfer of Assets and Rights to the Litigation Trust.

(a)     Litigation Trust Assets. As of the Effective Date, pursuant to and in accordance with section 1141 of the Bankruptcy Code, the Plan and the Confirmation Order, the Debtor, as applicable, hereby irrevocably transfers, assigns and delivers to the Litigation Trust all of its respective right, title and interest in and to the Litigation Trust Assets, free and clear of any and all liens, claims, encumbrances or interests of any kind in such property of any other Person. The Trustee agrees to accept and hold the Litigation Trust Assets in trust for the Litigation Trust Beneficiaries, subject to the terms of this Agreement. In no event shall any part of the Litigation Trust Assets (including Litigation Trust Proceeds (as defined below)) revert to or be distributed to the Debtor.  None of the foregoing transfers to the Litigation Trust shall constitute a merger or consolidation of the Debtor's estate or any of the respective Litigation Trust Assets, each of which shall retain its separateness following the transfer for all purposes relevant to the prosecution thereof.

(b)     In this Agreement, "***Litigation Trust Assets***" means the Causes of Action (as that term is defined in Section 1.12 of the Plan.

(c)     Privileges. In connection with Litigation Trust Assets, any attorney-client privilege, work product privilege, joint interest privilege or other privilege or immunity (collectively, the "***Privileges***") attaching to any documents or communications (whether written or oral) shall vest in the Trustee and its representatives, and the Debtor and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses. The Litigation Trust's receipt of the Privileges associated with the Litigation Trust Assets shall not operate as a waiver of other privileges possessed or retained by the Debtor.

(d)     Documents. After the Effective Date, the Debtor shall (i) deliver or cause

- 2 -

to be delivered to the Litigation Trust any and all documents reasonably requested by the Trustee and related to the Litigation Trust Assets (including those maintained in electronic format and original documents; *provided* that with respect to original documents that are proprietary to the Debtor and that the Debtor require in the operation of its business, the Debtor may provide copies in lieu of originals), whether held by the Debtor, or its employees, agents, advisors, attorneys, accountants, or any other professionals and (ii) provide reasonable access to such employees of the Debtor, its agents, advisors, attorneys, accountants or any other professionals hired by the Debtor with knowledge of matters relevant to the Litigation Trust Assets.

(e)     <u>Further Assurances</u>. As promptly as practicable after the Effective Date, the Debtor agrees to (i) at the reasonable request of the Trustee, execute and/or deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), (ii) take, or cause to be taken, all such further actions as the Trustee may reasonably request in order to evidence or effectuate the transfer of the Litigation Trust Assets and the Privileges to the Trustee and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan, and (iii) cooperate with the Trustee in the analysis and prosecution of the Litigation Trust Assets to the extent reasonable. Notwithstanding anything contained herein, without the express written consent of the Trustee, no Person or creditor of the Debtor shall be permitted to assert, bring, institute, or commence any Claim or Cause of Action that is transferred to the Litigation Trust pursuant to the Plan.

1.3     <u>Title to Litigation Trust Assets</u>.  The transfer of the Litigation Trust Assets to the Litigation Trust shall be made, as provided in the Plan and this Agreement, for the sole benefit of the Litigation Trust Beneficiaries. Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Debtor shall have no interest in or claim to the Litigation Trust Assets or the Litigation Trust, and the Litigation Trust shall succeed to all of the Debtor's right, title and interest in and to the Litigation Trust Assets. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to be retained by the Debtor, and the Trustee shall be deemed to have been designated as a representative of the Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Debtor, and all proceeds, income and recoveries on account of any such Litigation Trust Assets shall be assets of the Litigation Trust and paid over thereto immediately upon receipt by the Debtor, or any other Person. Notwithstanding the foregoing, all net proceeds, income, and recoveries of or on account of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed to the Litigation Trust Beneficiaries consistent with the terms of the Plan, the Confirmation Order and this Agreement.

1.4     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>. The Litigation Trust is organized and established as a trust pursuant to which the Trustee, subject to the terms and conditions contained herein and in the Plan, shall (i) hold the Litigation Trust Assets and administer the same in accordance with this Agreement and the Plan in accordance with Treasury Regulation section 301.7701-4(d) and (ii)

oversee and direct the expeditious but orderly liquidation of the Litigation Trust Assets. Accordingly, the sole purpose of the Litigation Trust is to liquidate the Litigation Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Litigation Trust Assets, and consistent with, the liquidating purpose of the Litigation Trust.

(b)     Actions of the Trustee. Subject to the terms of this Agreement, the Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Litigation Trust Assets, which includes, without limitation, pursuing recovery on the Litigation Trust Assets, making timely distributions and not unduly prolonging the duration of the Litigation Trust. The liquidation of the Litigation Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise. The Trustee, with the consent of a majority of the members of the Trust Board (which shall be comprised of 3 members and whose members will be appointed by the Trustee), shall have the absolute right to pursue, settle and compromise or not pursue any and all Litigation Trust Assets as it determines is in the best interests of the Litigation Trust Beneficiaries, and consistent with the purposes of the Litigation Trust. The Trustee shall have no liability for the outcome of any such decision except for any damages caused by gross negligence, bad faith, willful misconduct or knowing violation of law.

(c)     Relationship. This Agreement is intended to create a trust and a trust relationship and the Litigation Trust is to be governed and construed in all respects as a trust. The Litigation Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Trustee, or the Litigation Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trust and the Trustee, on the other, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement and the Plan.

(d)     No Waiver of Claims. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Trustee may enforce all rights to commence and pursue, as appropriate, any and all Litigation Trust Assets after the Effective Date. The Trustee shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced or the Litigation Trust Assets had not been transferred to the Litigation Trust in accordance with the Plan, the Confirmation Order and this Agreement, and all of the Reorganized Debtor's legal and equitable rights relating to any Causes of Action under the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced. Nothing in this Agreement shall be construed in a manner that is inconsistent with the Plan or the Confirmation Order.

1.5     Incorporation of Plan. The Plan and the Confirmation Order are each hereby incorporated into this Agreement and made a part hereof by this reference; *provided*, *however*, unless otherwise specified herein, to the extent that there is conflict between the provisions of this Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document

shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Agreement.

1.6     Appointment as Representative. Pursuant to sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, the Plan provides for the appointment of the Trustee as the duly appointed representative of the Debtor with respect to the Litigation Trust Assets and, as such, the Trustee succeeds to all of the rights and powers of a trustee in bankruptcy with respect to prosecution of the Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries in accordance with the terms of this Agreement, the Plan, and the Confirmation Order.

## ARTICLE 2

### LITIGATION TRUST INTERESTS

2.1     Allocation of Litigation Trust Interests. The allocation and distribution of the Litigation Trust Interests shall be accomplished as set forth in the Plan and the Confirmation Order. The aggregate number and face value of Litigation Trust Interests to be distributed pursuant to the Plan shall be determined by the Trustee, consistent with the intent and purposes of the Plan, subject, however, to the approval of the Bankruptcy Court, upon notice to the Litigation Trust Beneficiaries.

2.2     Interests Beneficial Only. The ownership of a Trust Interest shall not entitle any Litigation Trust Beneficiaries to any title in the Litigation Trust Assets as such (which title shall be vested in the Trustee) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

2.3     Evidence of Beneficial Interests. The Litigation Trust Interests will not be represented by certificates, securities, receipts or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Trustee or the Registrar (defined below).  The death, incapacity or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust, (ii) entitle the representatives or creditors of the deceased party to an accounting, (iii) entitle the representatives or creditors of the deceased party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Litigation Trust Assets or for a partition or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries hereunder.

2.4     Securities Law Registration. It is intended that the Trust Interests and the entitlements hereunder, if any, of Litigation Trust Beneficiaries, shall not constitute "securities." To the extent the Trust Interests or the entitlements of Litigation Trust Beneficiaries are deemed to be "securities," the issuance of Trust Interests to Litigation Trust Beneficiaries or the issuance to Litigation Trust Beneficiaries of any entitlements hereunder or under the Plan (and any redistribution of any of the foregoing pursuant to the Plan or otherwise) shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended (the "***Securities Act***"), and any applicable state and local laws requiring registration of securities. If the Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and/or reporting requirements of the Securities Act, the Securities Exchange Act of 1934, as amended (the "***Exchange Act***"), the Trust Indenture Act

of 1939, as amended (the "***Trust Indenture Act***"), or the Investment Company Act of 1940, as amended (the "***Investment Company Act***"), then the Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file reports with the Securities and Exchange Commission (the "***SEC***") to the extent required by applicable law. Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Trustee from amending this Agreement to make such changes as are deemed necessary or appropriate by the Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act or the Investment Company Act, except that no amendment to this Agreement may be made which would not be permitted by Article 11 of this Agreement.

2.5     Transfers.

(a)     No transfer, sale assignment, distribution, exchange, pledge, hypothecation, mortgage or other disposition (a "***Transfer***") of a Trust Interest or any entitlement hereunder of a Litigation Trust Beneficiary may be effected or made except as hereinafter provided. Transfers of Trust Interests or entitlements hereunder of a Litigation Trust Beneficiary and/or under the Plan may be made (i) by operation of law or by will or the laws of descent and distribution; (ii) if the Trustee has otherwise received such legal advice or other information that it, in its sole discretion, deems necessary or appropriate to assure that any other disposition shall not require the Litigation Trust to comply with the registration and reporting requirements of the Exchange Act or the Investment Company Act; or (iv) if the Trustee has determined to register under such Acts, as necessary, and/or make periodic reports in order to enable such other disposition to be made. In the event that any such disposition is allowed, the Trustee may add such restrictions upon transfer and other terms to this Agreement as are deemed necessary or appropriate by the Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

(b)     The Trustee shall act as a registrar (the "***Registrar***"), for the purpose of recording ownership of the Trust Interests as provided for in this Agreement. The Trustee may appoint an institution to act as Registrar and pay reasonable compensation in respect of such services, upon approval of the Trust Board.

(c)     The Trustee shall cause to be kept, a registry of the Litigation Trust Beneficiaries (the "***Trust Register***") which shall be maintained pursuant to such reasonable regulations as the Trustee and the Registrar may prescribe.

2.6     Access to the Trust Register by the Litigation Trust Beneficiaries. Litigation Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Registrar and the Trustee and in accordance with the reasonable regulations prescribed by the Registrar and the Trustee, to inspect and, at the sole expense of the Litigation Trust Beneficiaries seeking the same, make copies of the Trust Register, in each case for a purpose reasonably related to such holder's interest in the Litigation Trust.

2.7     Absolute Owners. The Trustee may deem and treat the holder of a Litigation Trust Interest of record in the Trust Register as the absolute owner of such Litigation Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all

- 6 -

other purposes whatsoever and the Trustee shall not be charged with having received notice of any claim or demand to such Litigation Trust Interests or the interest therein of any other Person.

## ARTICLE 3

### THE TRUSTEE

3.1    Litigation Trust Proceeds. Any and all proceeds, income and/or recoveries obtained on account of or from the Litigation Trust Assets, after payment of any and all expenses of the Litigation Trust, shall be added to the Litigation Trust Assets (the "**Litigation Trust Proceeds**"), held as a part thereof (and title therein shall be vested in the Trustee) and administered in accordance with the terms of this Agreement.

3.2    Collection of Income. The Trustee shall collect all income earned with respect to the Litigation Trust Assets, which shall thereupon be added to the Litigation Trust Assets, held as a part thereof (and title therein shall be vested in the Trustee) and administered in accordance with the terms of this Agreement.

3.3    Payment of Litigation Trust Expenses. The Trustee shall maintain the Litigation Trust Assets (i) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable and necessary expenses (including but not limited to, the reasonable costs and expenses of the Trustee (including reasonable fees, costs, and expenses of professionals retained thereby), any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets or reasonable fees and expenses in connection with, arising out of, or related to, the Litigation Trust Assets and litigation associated therewith), (iii) to pay the costs and expenses of the valuations of the Litigation Trust Assets incurred by the Trustee in accordance with Section 5.1(c) of this Agreement, (iv) to pay or reimburse amounts in accordance with Article 7 hereof and (v) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the Litigation Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement.

3.4    Distributions. The Trustee shall make distributions of Litigation Trust Proceeds in accordance with the provisions of Article 6 of this Agreement and the Plan.

3.5    Tenure, Removal, and Replacement of the Trustee.

(a)    The Trustee will serve until the earliest of (i) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Plan, (ii) the Trustee's resignation and the appointment of a successor pursuant to Section 3.5(b) of this Agreement, (iii) the Trustee's removal pursuant to Section 3.5(c) of this Agreement, (iv) the Trustee's death (if applicable) and (v) the termination of the Litigation Trust in accordance with this Agreement, the Confirmation Order and the Plan.

(b)    The Trustee may resign by filing a notice with the Bankruptcy Court (a "**Resignation Notice**"). Such resignation will become effective on the later to occur of: (i) the day specified in such Registration Notice and (ii) the appointment of a successor trustee as provided in Section 3.5(d) and the acceptance by such successor trustee of such appointment in accordance with Section 3.6 of this Agreement. If a successor trustee is not appointed or does not

- 7 -

accept its appointment within ninety (90) days following the filing of the Resignation Notice, the Trustee shall, or any holder of a Trust Interest may, file a motion with the Bankruptcy Court, upon notice and a hearing, seeking the appointment of a successor trustee.

(c)     In the event that holders of Allowed Class 6 and Class 7 Claims holding at least seventy five percent (75%) of the Trust Interests at any time request that the Trustee be removed for any reason by notice to the Trustee, then a new Trustee shall be elected by the Trust Board.

(d)     In the event of a vacancy in the position of the Trustee (whether by removal, resignation, or death, if applicable), a majority of the Trust Board may appoint a successor trustee.

(e)     Immediately upon the appointment of any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Trustee hereunder will be vested in and undertaken by the successor trustee without any further act, and the successor trustee will not be liable personally for any act or omission of the predecessor Trustee. A successor trustee shall have all the rights, privileges, powers, and duties of the predecessor Trustee under this Agreement, the Confirmation Order and the Plan.  The predecessor Trustee shall thereupon cease to have any further rights, powers, privileges or duties hereunder, except the right to receive unpaid compensation due as of the date of the appointment of the successor trustee pursuant to any agreement then in effect.

(f)     Upon the appointment of a successor trustee, the predecessor Trustee (or the duly appointed legal representative of a deceased Trustee) shall, if applicable, when requested in writing by the successor trustee or the Bankruptcy Court, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed all the estates, properties, rights, powers and trusts of such predecessor Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets, documents, instruments, records and other writings relating to the Litigation Trust, the Litigation Trust Assets, the Litigation Trust Proceeds, the Trust Interests, and the entitlements of the Litigation Trust Beneficiaries hereunder, then in its possession and held hereunder, and shall execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court or a successor trustee to effect the termination of such predecessor Trustee's capacity under the Litigation Trust, this Agreement and the Plan and otherwise assist and cooperate, without cost or expense to the predecessor Trustee, in effectuating the assumption of its obligations and functions by the successor trustee.

(g)     The death, resignation or removal of the Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

3.6     <u>Acceptance of Appointment by Successor Trustee</u>. Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations and duties of the predecessor Trustee on the same terms and conditions hereunder and accepting the terms of this Agreement and agreeing that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor trustee and all of its heirs, and

legal and personal representatives, successors and assigns, and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of the predecessor Trustee hereunder with like effect as if originally named herein.

3.7     Role of the Trustee. In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, the Trustee, subject to the terms and conditions contained in this Agreement, in the Plan and in the Confirmation Order, shall have the power to (i) prosecute, compromise and settle, abandon or dismiss for the benefit of the Litigation Trust all Litigation Trust Assets, rights, The Causes of Action transferred to the Litigation Trust (whether such suits are brought in the name of the Litigation Trust, the Trustee or otherwise), and (ii) otherwise perform the functions and take the actions provided for or permitted in the Plan, in the Confirmation Order or in this Agreement. In all circumstances, the Trustee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

3.8     Authority of Trustee. Subject only to any limitations contained herein, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Litigation Trust, and is expressly authorized to:

(a)     hold legal title to any and all rights of the holders of Trust Interests in or arising from the Litigation Trust Assets, including collecting, receiving any and all money and other property belonging to the Litigation Trust (including any Litigation Trust Proceeds) and the right to vote any claim or interest relating to a Litigation Trust Claim in a case under the Bankruptcy Code and receive any distribution thereon;

(b)     exercise and perform the rights, powers and duties held by the Debtor's estate with respect to the Litigation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a trustee under sections 704 and 1106 of the Bankruptcy Code, including commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

(c)     take possession and control, administer, maintain and dispose of documents, books and records related to the Litigation Trust Assets other than original documents, books and records that are proprietary to the Debtor and that the Debtor requires in the operation of its business;

(d)     protect and enforce the rights to the Litigation Trust Assets by any method deemed appropriate including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(e)     obtain reasonable insurance coverage with respect to the liabilities and obligations of the Trustee under this Agreement (in the form of an errors and omissions policy or otherwise);

(f)     obtain insurance coverage with respect to real and personal property that may become assets of the Litigation Trust, if any;

(g)    retain and pay such counsel and other professionals, including any professionals previously retained by the Debtor or any Non-Insider Equity Holder, as the Trustee shall select to assist the Trustee in its duties, on such terms as the Trustee deems reasonable and appropriate, without Bankruptcy Court approval.  The Trustee may commit the Litigation Trust to and shall pay such counsel, experts, litigation consultants, and other professionals reasonable compensation for services rendered (including on an hourly, contingency, or modified contingency basis) and reasonable and documented out-of-pocket expenses incurred;

(h)    retain and pay an accounting firm to perform such reviews and/or audits of the financial books and records of the Litigation Trust as may be required by applicable laws (including, if applicable, securities laws) and/or this Agreement, and to prepare and file any tax returns, informational returns or periodic and current reports for the Litigation Trust as required by applicable laws (including, if applicable, securities laws) and/or by this Agreement. The Trustee may commit the Litigation Trust to and shall pay such accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(i)    retain, enter into fee arrangements with and pay such third parties to assist the Trustee in carrying out its powers, authorities and duties under this Agreement.  The Trustee may commit the Litigation Trust to and shall pay all such Persons reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, as well as commit the Litigation Trust to indemnify any such Persons in connection with the performance of services (provided that such indemnity shall not cover any losses, costs, damages, expenses or liabilities that result from the gross negligence, bad faith, willful misconduct or knowing violation of law by such Persons);

(j)    in the exercise of its reasonable discretion, waive any privilege (including the Privileges) or any defense on behalf of the Litigation Trust or, with respect to the Litigation Trust Assets;

(k)    investigate, analyze, initiate, compromise, settle, adjust, arbitrate, mediate, sue on or defend, pursue, prosecute, release, withdraw, abandon, dismiss, exercise rights, powers and privileges with respect to, litigate to judgment or otherwise administer, in accordance with the terms set forth herein, all causes of action, objections and Litigation Trust Assets in favor of or against the Litigation Trust without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, except as set forth in Section 3.9, below;

(l)    avoid and recover any transfers of the Debtor's property that are included as Causes of Action as provided for in this Agreement, in the Plan, and as may be permitted by the Bankruptcy Code or applicable state law;

(m)    invest any moneys held as part of the Litigation Trust in accordance with the terms of Section 3.15 of this Agreement, limited, however, to such investments that are consistent with the Litigation Trust's status as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Rev. Proc 94-45, 1994-2 C.B. 684;

(n)    request any appropriate tax determination with respect to the Litigation

Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

   (o) seek the examination of any Person, subject to the provisions of Bankruptcy Rule 2004 or any other applicable law or rule;

   (p) make distributions in accordance with <u>Article 6</u> of this Agreement; and

   (q) take or refrain from taking any and all other actions that the Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Litigation Trust Assets, or to otherwise carry out the purposes hereof.

  3.9 <u>Limitation of Trustee's Authority</u>.

   (a) Notwithstanding anything herein to the contrary, the Trustee shall not (i) be authorized to engage in any trade or business, (ii) take such actions inconsistent with the orderly liquidation of Litigation Trust Assets as are required or contemplated by applicable law, the Plan, the Confirmation Order, or this Agreement, or (iii) be authorized to engage in any investments or activities inconsistent with the treatment of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

   (b) Notwithstanding anything herein to the contrary, the Trustee shall not be permitted to take any of the actions described below (the "***Prior Notice Actions***") without prior notice to and, as required, the requisite approval of Trust Board in accordance with the following terms.  If the Trustee intends to take any one or more of the Prior Notice Actions, the Trustee shall provide at least ten (10) Business Days prior notice thereof to all Members of the Trust Board, which notice shall reasonably describe the intended Prior Notice Action(s) and advise the Trust Board of their right to object by an objection deadline that is at least ten (10) Business Days after the date such notice is mailed.  If no objections to the proposed Prior Notice Action(s) are actually received by the stated objection deadline from a majority of the members of the Trust Board, the Trustee shall be authorized to carry out the specified Prior Notice action(s) to which no such objections were received.  If, on the other hand, holders of a majority of the members of the Trust Board object to the proposed Prior Notice Action(s) by objection actually received by the Trustee on or before the objection deadline, then the Trustee shall not be authorized to carry out any Prior Notice Action(s) not approved by a majority of the members of the Trust Board.  Alternatively, the Trustee may seek approval of the Trust Board in advance of taking any Prior Notice Action.  For the purpose hereof, each of the following shall constitute Prior Notice Actions:

     (i) the retention of any professional (including, without limitation, attorneys, accountants and appraisers) by the Trustee after the Effective Date of the Plan, including the terms of such retention;

     (ii) any settlement or withdrawal of a Litigation Trust Claim where the amount in controversy exceeds $250,000;

     (iii) any determination to seek audited financial statements for the Litigation Trust;

- 11 -

(iv)     any determination to make the Litigation Trust a reporting entity pursuant to Section 11.1(a)(iv) hereof;

(v)     any action to enter into any one or more of the following to the extent the same results in aggregate expenditures greater than $25,000 during any fiscal year:

> (A)     obtaining insurance coverage of the type described in Sections 3.8(e) or (f) hereof or otherwise;
>
> (B)     any agreement to provide services (other than professional services) to the Litigation Trust; or
>
> (C)     any non-ordinary course transaction.

(vi)     any material amendment or modification to the agreement governing the Trustee's compensation, as described in Section 3.13 hereof.

(c)     The Litigation Trust shall not hold 50% or more of the stock (in either vote or value) of any Person that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in a Person that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Litigation Trust Assets.

3.10     Books and Records.

(a)     The Trustee shall maintain books and records relating to the Litigation Trust Assets, the status of Claims against the Litigation Trust Assets and income of the Litigation Trust and the payment of expenses and liabilities of, claims against or assumed by, the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements, if any, of the Litigation Trust as well as the reporting requirements set forth in Article 9 of and elsewhere in this Agreement.

(b)     Litigation Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Trustee, and in accordance with the reasonable regulations prescribed by the Trustee, to inspect and, at the sole expense of such holder seeking the same, make copies of the books and records relating to the Litigation Trust on any Business Day and as often as may be reasonably be desired, in each case for a purpose reasonably related to such holder's interest in the Litigation Trust.

3.11     Inquiries into Trustee's Authority. Except as otherwise set forth in this Agreement, the Confirmation Order or the Plan, no Person dealing with the Litigation Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Litigation Trust Assets.

3.12 <u>Compliance with Laws</u>. Any and all distributions of Litigation Trust Assets shall be in compliance with applicable laws, including applicable federal and state securities laws.

3.13 <u>Compensation and Reimbursement of the Trustee</u>. Notwithstanding anything to the contrary contained herein, the Trustee shall be compensated for its services, and reimbursed for its reasonable out-of-pocket expenses incurred in connection with the performance of its duties hereunder solely from the Litigation Trust Assets, in accordance with and pursuant to the terms of a separate agreement to be negotiated with, and approved by, the Creditors' Committee prior to the Effective Date of the Plan.

3.14 <u>Reliance by Trustee</u>. Except as otherwise provided herein:

       (a) the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, documents, analyses and information provided or to be provided by the Debtor and its professionals, whether such professionals were retained in the Chapter 11 Case or otherwise; and

       (b) Persons dealing with the Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability.

3.15 <u>Investment and Safekeeping of Litigation Trust Assets</u>. The Trustee shall invest all Litigation Trust Assets (pending distribution in accordance with <u>Article 6</u> of this Agreement) only in Cash and Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided*, *however*, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701- 4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and (b) the Trustee may retain any Litigation Trust Proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets in Cash.

3.16 <u>Standard of Care; Exculpation</u>. Neither the Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Trustee in good faith, other than (i) acts or omissions resulting from the Trustee's or any such agent's, representative's or professional's gross negligence, bad faith, willful misconduct or knowing violation of law or (ii) acts or omissions from which the Trustee or any such agent, representative or professional derived an improper personal benefit. The Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee,

unless such determination is based on gross negligence, bad faith, willful misconduct or knowing violation of law. No amendment, modification or repeal of this Section 3.16 shall adversely affect any right or protection of the Trustee or any of its agents, representatives or professionals that exists at the time of such amendment, modification or repeal.

ARTICLE 4

[RESERVED]

ARTICLE 5

TAX MATTERS

5.1     Federal Income Tax Treatment of the Litigation Trust.

(a)     For all federal income tax purposes, all parties (including the Debtor, the Reorganized Debtor, the Litigation Trust, the Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Equity Interests are Allowed on or after the Effective Date, as (a) a transfer of the Litigation Trust Assets directly to those Allowed Equity Interest Holders receiving Trust Interests, followed by (b) the transfer by such Persons to the Litigation Trust of the Litigation Trust Assets in exchange for beneficial interests in the Litigation Trust.  Accordingly, those holders of Allowed Equity Interests receiving Litigation Trust Interests shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets. The foregoing treatment also shall apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS, upon audit, or otherwise if not contested by the Trustee), the Trustee shall (i) file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article 5 and Section 5.02 of the Plan and (ii) annually send to each holder of a Trust Interest a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders and parties to report such items on their federal income tax returns. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any governmental unit.

(c)     As soon as possible after the Effective Date, but in no event later than ninety (90) days thereafter (i) the Trustee, in consultation with the Debtor, will determine the fair market value as of the Effective Date of all assets transferred to the Litigation Trust and (ii) the Trustee shall apprise, in writing, the Litigation Trust Beneficiaries of such valuation. In connection with the preparation of the valuation contemplated hereby, the Trustee shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary in connection therewith. The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith.

- 14 -

(d)    The Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(e)    The Trustee shall be responsible for payments, out of the Litigation Trust Assets and Litigation Trust Proceeds, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.

(f)    The Trustee may require any of the Litigation Trust Beneficiaries to furnish to the Trustee its Employer or Taxpayer Identification Number as assigned by the IRS and the Trustee may condition any distribution or payment to any of them upon receipt of such identification number.

5.2    <u>Allocations of Litigation Trust Taxable Income</u>. Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described in the Plan or herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued at their tax book value) to the Litigation Trust Beneficiaries, in each case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust (including all distributions held in escrow pending the resolution of Disputed Claims). Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets. The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value on the Effective Date as determined under <u>Section 5.1(c)</u> above, adjusted in either case in accordance with tax accounting principles prescribed by the Tax Code, and applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

5.3    <u>Tax Withholdings by Trustee</u>. The Trustee shall be authorized to collect such tax information from Litigation Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as the Trustee, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and this Agreement. The Trustee shall take reasonable steps and give reasonable notices to Litigation Trust Beneficiaries to alert them to this requirement. In order to receive distributions pursuant to the Plan and this Agreement, all Litigation Trust Beneficiaries shall be required to identify themselves to the Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. This identification requirement applies to all Litigation Trust Beneficiaries, including those Beneficiaries who hold their Equity Interests in "street name." The Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion and, until such information is delivered, may treat such Beneficiary's Equity Interest as a Disputed Equity Interest. If any requested tax information is not furnished by a Litigation Trust Beneficiary to the Trustee within six (6) months of the original request for such information (the "***Withholding Deadline***"), no further distributions shall be made to such Litigation Trust Beneficiary; *provided, however*, that upon the delivery of such

- 15 -

information by a Litigation Trust Beneficiary, the Trustee shall make all such distributions to which such Litigation Trust Beneficiary is entitled, without interest. If the Trustee fails to withhold in respect of amounts received or distributable to any Litigation Trust Beneficiary and the Trustee or the Litigation Trust is later determined to be liable for the amount of such withholding, such Litigation Trust Beneficiary shall reimburse the Trustee or the Litigation Trust, as appropriate, for such liability (to the extent such amounts were actually distributed to such holder).

**ARTICLE 6**

**DISTRIBUTIONS**

6.1     <u>Distributions; Withholding</u>. The Trustee shall distribute to the Litigation Trust Beneficiaries, in accordance with this <u>Article 6</u>, all net Cash income plus all net Cash proceeds from the liquidation of Litigation Trust Assets; *provided*, *however*, that the Litigation Trust may retain and not distribute to the Litigation Trust Beneficiaries, and maintain as a reserve, such amounts as determined by the Trustee (i) as are reasonably necessary to meet contingent liabilities of the Litigation Trust during liquidation, (ii) to pay reasonable and necessary expenses incurred in connection with liquidation and any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets, and (iii) as are reasonably necessary to establish and maintain the Disputed Equity Interest Reserve (defined below). The Debtor shall provide the Trustee with such information as may be reasonably requested by the Trustee regarding the stock transfer ledger for purposes of maintaining and establishing the Disputed Equity Interest Reserve set forth in clause (iii) of the preceding sentence. All distributions and/or payments to be made to the holders of Trust Interests pursuant to this Agreement shall be made to each holder of Trust Interests pro rata based on the amount of Trust Interests held by such holder compared with the aggregate amount of Trust Interests outstanding, subject, in each case, to the terms of the Confirmation Order, the Plan and this Agreement. The Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

6.2     <u>Manner of Payment or Distribution</u>.  All distributions to be made by the Trustee to the Litigation Trust Beneficiaries shall be payable to the holders of Trust Interests of record as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such day shall be the following Business Day. If the distribution shall be in Cash, the Trustee shall distribute such Cash by wire, check, or such other method as the Trustee deems appropriate under the circumstances.

6.3     <u>Cash Distributions</u>. No Cash distributions shall be required to be made to any Litigation Trust Beneficiary in an amount less than $100.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. The foregoing shall not apply to the final distribution made to the Litigation Trust Beneficiaries.

6.4     <u>Delivery of Litigation Trust Distributions</u>.

(a)     Except as set forth in <u>Section 6.4(b)</u>, all distributions under this

- 16 -

Agreement to a Litigation Trust Beneficiary shall be made at the address of such Beneficiary as set forth in the Trust Register or at such other address or in such manner as such Beneficiary shall have specified for payment purposes in a written notice to the Trustee and the Registrar at least twenty (20) days prior to such distribution date.

(b)     If any distribution to any Litigation Trust Beneficiary is returned as undeliverable, and after reasonable efforts the Trustee has been unable to determine the current address of such Beneficiary, such undeliverable or unclaimed distribution shall be deemed unclaimed property 120 days after the date of such distribution, and shall be reallocated to the remaining Litigation Trust Beneficiaries and distributed to such remaining Litigation Trust Beneficiaries in accordance with the terms of this Agreement.  Any such undeliverable or unclaimed distributions shall not be subject to (i) any claims by such Litigation Trust Beneficiary or (ii) the unclaimed property or escheat laws of any state or governmental unit.

6.5     Disputed Equity Interest Reserve.     The Trustee shall establish a disputed equity interest reserve (the "*Disputed Reserve*"), which shall include assets held separately from other assets of the Litigation Trust, subject to an allocable share of all expenses and obligations for the Litigation Trust, on account of Disputed Claims.  The amount of the Disputed Reserve shall be equal to the amount necessary to satisfy the distributions to which the holders of the relevant Disputed Claim or Interest would be entitled to receive if all such Disputed Claim or Interest were to be subsequently Allowed.  The Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Disputed Equity Interest Reserve as a "disputed ownership fund" within the meaning of that section (ii) allocate taxable income or loss to the Disputed Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claim or Interest are Disputed Claims or Interest), and (iii) distribute assets from the Disputed Equity Interest Reserve and distribute the same as provided in this Article 6 as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved.  The Litigation Trust Beneficiaries shall be bound by such election, if made by the Trustee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

## ARTICLE 7

### INDEMNIFICATION

7.1     Indemnification of Trustee.

(a)     To the fullest extent permitted by law, the Litigation Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Trustee, and each of its respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "*Indemnified Persons*") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including reasonable fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does, or refrains from doing for the business or affairs of the Litigation Trust, except to the extent that the

loss, cost, damage, expense or liability resulted (x) from the Indemnified Person's gross negligence, bad faith, willful misconduct or knowing violation of law or (y) from an act or omission from which the Indemnified Person derived an improper personal benefit. To the extent reasonable, the Litigation Trust shall pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Litigation Trust. The indemnification provided under this Section 7.1 shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee and/or any other Indemnified Person, and shall inure to the benefit of the Trustee's and each other Indemnified Person's heirs, successors and assigns.

(b)     Any Indemnified Person may waive the benefits of indemnification under this Section 7.1, but only by an instrument in writing executed by such Indemnified Person.

(c)     The rights to indemnification under this Section 7.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this Section 7.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under this Agreement, or any other agreement or instrument to which that Person is a party.

## ARTICLE 8

### REPORTING OBLIGATIONS OF TRUSTEE

8.1     Reports.

(a)     The Trustee shall serve quarterly reports upon the members of the Trust Board, and provide annual reports to the Litigation Trust Beneficiaries, with respect to (i) the prosecution and resolution of the Litigation Trust Assets, (ii) the status of Claims against the Litigation Trust Assets, and (iii) expenditures, receipts, and distributions of the Litigation Trust. The Trustee shall cause to be prepared, as applicable, either at such times as may be required by the Exchange Act, if applicable, or, not less than annually, financial statements of the Litigation Trust, to be delivered to Litigation Trust Beneficiaries together with annual income tax reporting of the Litigation Trust.

(b)     Within ten (10) Business Days after the end of the relevant report preparation period the Trustee shall cause notice of any information reported pursuant to Section 8.1(a) to be given to Litigation Trust Beneficiaries and to be filed with the Bankruptcy Court.

(c)     The Trustee may post any report required to be provided under this Section 8.1 on a web site maintained by the Trustee in lieu of actual notice to the Litigation Trust Beneficiaries (unless otherwise required by law).

(d)     All of the foregoing reports, and the information and documents upon which such reports are based, shall be made available to Litigation Trust Beneficiaries in accordance with Section 3.10 hereof.

## ARTICLE 9

## TERM; TERMINATION OF THE LITIGATION TRUST

9.1    Term; Termination of the Litigation Trust.

(a)    The Litigation Trust shall commence on the date hereof and terminate no later than the fifth anniversary of the Effective Date; *provided*, *however*, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation Trust if it is necessary to the liquidation of the Litigation Trust Assets. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) days prior to the expiration of each extended term; *provided*, *however*, that in no event shall the term of the Litigation Trust extend past the tenth (10th) anniversary of the Effective Date; *provided further* that neither this Agreement nor the continued existence of the Litigation Trust shall prevent the Debtor from closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code and obtaining a final decree pursuant to Bankruptcy Rule 3022.

(b)    The Litigation Trust may be terminated earlier than its scheduled termination if the Trustee has administered all Litigation Trust Assets and performed all other duties required by the Plan, the Confirmation Order, this Agreement and the Litigation Trust.

(c)    If at any time the Trustee determines that the expense of administering the Litigation Trust is likely to exceed the value of the remaining Litigation Trust Assets, the Trustee may (i) donate any balance to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986, as amended, that is unrelated to the Debtor and any insider of the Debtor and (ii) dissolve the Litigation Trust.

9.2    Continuance of Trust for Winding Up. After the termination of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Trustee shall continue to act as such until its duties have been fully performed. Prior to the final distribution of all of the remaining Litigation Trust Assets, the Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own reasonable costs and expenses, in accordance with the terms of this Agreement, until such time as the winding up of the Litigation Trust is completed. Upon termination of the Litigation Trust, the Trustee shall retain for a period of three years the books, records, lists of the Litigation Trust Beneficiaries, the Trust Register, and other documents and files that have been delivered to or created by the Trustee. Except as otherwise specifically provided herein, upon the termination of the Litigation Trust, the Trustee shall have no further duties or obligations hereunder.

## ARTICLE 10

## AMENDMENT AND WAIVER

10.1    Amendment and Waiver.

(a)    The Trustee may amend, supplement or waive any provision of, this Agreement, without notice to or the consent of the Litigation Trust Beneficiaries or the approval

of the Bankruptcy Court: (i) to cure any ambiguity, omission, defect or inconsistency in this Agreement; (ii) to comply with any requirements in connection with the U.S. Federal income tax status of the Litigation Trust as a "liquidating trust"; (iii) to comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Exchange Act, the Trust Indenture Act or the Investment Company Act; (iv) to make the Litigation Trust a reporting entity and, in such event, to comply with any requirements in connection with satisfying the registration or reporting requirements of the Exchange Act, the Trust Indenture Act or the Investment Company Act; and (v) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Agreement and the Plan; *provided*, *however*, that notice shall be given to the Litigation Trust Beneficiaries and the Reorganized Debtor promptly after such amendment, supplement or waiver is effective.

(b) Any provision of this Agreement that the Trustee cannot amend pursuant to Section 10.1(a) of this Agreement may be amended or waived by the Trustee, subject to approval of a majority of the Trust Board.

(c) Notwithstanding anything contained in this Section 10.1, no amendment, supplement, or waiver may be made to this Agreement that (i) would adversely affect the payments and/or distributions to be made under this Agreement to (or on behalf or for the account of) any Litigation Trust Beneficiary, or (ii) is inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).

## ARTICLE 11

### MISCELLANEOUS PROVISIONS

11.1 Intention of Parties to Establish the Litigation Trust. This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended in accordance with Section 10.1 to comply with such federal income tax laws, which amendments may apply retroactively.

11.2 Litigation Costs. If, during the term of this Agreement, any dispute arises among the parties to this Agreement regarding the provisions of this Agreement or the enforcement thereof, each party shall bear its own costs and expenses, including attorneys' fees.

11.3 Laws as to Construction. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to whether any conflicts of law would require the application of the law of another jurisdiction.

11.4 Jurisdiction. Without limiting any Person's right to appeal any order of the Bankruptcy Court or to seek withdrawal of the reference with regard to any matter, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii)

any and all actions related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties, including the Litigation Trust Beneficiaries, hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

11.5    Severability. If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11.6    Notices. All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic mail or facsimile communication (as evidenced by a confirmed fax transmission report); (iii) sent by first class U.S. mail; (iv) sent by commercial delivery service or courier; or (v) with respect to notices to any Litigation Trust Beneficiary that has elected to receive notices electronically, by posting to a website maintained for Litigation Trust Beneficiaries (a "*Litigation Trust Website*"). Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

| **If to the Trustee:** | Telephone:<br>Facsimile: |
|---|---|
| (with a copy to) | Telephone:<br>Facsimile:<br>Attn: |
| | |
| If to the Debtor or the Reorganized Debtor: | Telephone:<br>Facsimile:<br>Attn: |
| (with a copy to) | Telephone:<br>Facsimile:<br>Attn: |
| | |
| **If to the Litigation Trust Beneficiaries:** | To the name and address set forth on the registry maintained by the Trustee or by posting to the Litigation Trust Website, as applicable. |

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery; (ii) if by electronic mail or facsimile communication, on the date of receipt or confirmed transmission of the communication; (iii) if by mail, on the date of receipt; and (iv) if by posting to the Litigation Trust Website, on the day following such posting. Any Person from time to time may change his, her or its address, facsimile number, or other information for the purpose of notices to that Person by giving notice specifying such change to the Trustee, and the Reorganized Debtor.

11.7 <u>Fiscal Year</u>. The fiscal year of the Litigation Trust will begin on the first day of the month following the Effective Date and end on the last day of the month on which the Effective Date occurred of each calendar year.

11.8 <u>Construction; Usage</u>.

(a) <u>Interpretation</u>. In this Agreement, unless a clear contrary intention appears:

(i) the singular number includes the plural number and vice versa;

(ii) reference to any Person includes such Person's successors and assigns but, if applicable, only if such successors and assigns are not prohibited by this Agreement, and reference to a Person in a particular capacity excludes such Person in any other capacity or individually;

(iii) reference to any gender includes each other gender;

(iv) reference to any agreement, document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof;

(v) reference to any Applicable Law means such Applicable Law as amended, modified, codified, replaced or reenacted, in whole or in part, and in effect from time to time, including rules and regulations promulgated thereunder, and reference to any section or other provision of any Applicable Law means that provision of such Applicable Law from time to time in effect and constituting the substantive amendment, modification, codification, replacement or reenactment of such section or other provision;

(vi) "hereunder," "hereof," "hereto," and words of similar import shall be deemed references to this Agreement as a whole and not to any particular Article, Section or other provision hereof;

(vii) reference to Articles, Sections, Schedules or Exhibits herein shall be deemed to be references to the Articles, Sections, Schedules and Exhibits to this Agreement unless otherwise specified;

(viii) "including" means including without limiting the generality of any description preceding such term; and

(ix) references to documents, instruments or agreements shall be deemed to refer as well to all addenda, exhibits, schedules or amendments thereto.

(b) <u>Legal Representation of the Parties</u>. This Agreement was negotiated by the parties hereto with the benefit of legal representation and any rule of construction or

interpretation otherwise requiring this Agreement to be construed or interpreted against any party hereto shall not apply to any construction or interpretation hereof.

(c)     Headings. The headings contained in this Agreement are for the convenience of reference only, shall not be deemed to be a part of this Agreement and shall not be referred to in connection with the construction or interpretation of this Agreement.

11.9     Counterparts; Facsimile; PDF. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. Any facsimile or portable document format copies hereof or signature hereon shall, for all purposes, be deemed originals.

11.10     Confidentiality. The Trustee and each successor trustee (each a "**Covered Person**") shall, during the period that they serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity to which any of the Litigation Trust Assets relate or of which it has become aware in its capacity (the "**Information**"), except to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Debtor reasonably promptly (unless prohibited by law) so that the Debtor may seek an appropriate protective order or other appropriate remedy or, at its discretion, waive compliance with the terms of this Section 11.10 (and if the Debtor seeks such an order, the relevant Covered Person will provide cooperation as the Debtor shall reasonably request). In the event that no such protective order or other remedy is obtained, or that the Debtor waives compliance with the terms of this Section 11.10 and any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required and will give the Debtor written notice (unless prohibited by law) of the Information to be disclosed and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

11.11     Entire Agreement. This Agreement (including the Recitals), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any Entity or Person other than the parties hereto and their respective heirs, administrators, executors, permitted successors, or permitted assigns any right to remedies under or by reason of this Agreement, except that the Persons identified in Article 7 hereof are intended third party beneficiaries of Article 7 hereof and shall be entitled to enforce the provisions thereof as if they were parties hereto.

11.12     No Bond. The Trustee shall serve without bond, and notwithstanding any state or

federal law to the contrary, the Trustee (including any successor trustee) shall be exempt from giving any bond or other security in any jurisdiction.

11.13    Effectiveness. This Agreement shall become effective on the Effective Date.

11.14    Investment Company Act. This Litigation Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Litigation Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act.

11.15    Successor and Assigns. This Agreement shall inure to the benefit of the parties hereto and the intended third party beneficiaries identified in Section 11.11 hereof (to the extent specified therein), and shall be binding upon the parties hereto, and each of their respective successors and assigns to the extent permitted by this Agreement and applicable law.

11.16    Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.17    No Execution. All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a holder of a Litigation Trust Interest, and no holder of a Litigation Trust Interest or any other Person can execute upon, garnish or attach the Litigation Trust Assets in any manner or compel payment from the Litigation Trust except by an order of the Bankruptcy Court. Distributions from the Litigation Trust will be governed solely by the Plan and this Agreement.

11.18    Irrevocability. The Litigation Trust is irrevocable but is subject to amendment and waiver as provided for in this Agreement.

[*SIGNATURE PAGE FOLLOWS*]

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**THE DEBTOR**:

**OLMOS EQUIPMENT INC.**


By:_____*/s/Larry Struthoff*_____
          Larry Struthoff, authorized agent for the Debtor

**ORIGINAL TRUSTEE**:

By:_____
Name:
Title: